13L 159
46 749
13L 159
52 1664

## RIVAS'S HEIRS *vs.* BERNARD.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF EAST BATON ROUGE, THE JUDGE THEREOF PRESIDING.

By the article 339, of the Louisiana Code, the adjudication of property held in common, between the surviving parent and their minor children, *is alone authorized.* The separate property of the deceased parent descends to his children, and can only be alienated in the manner prescribed by law, for the sale of minor's property.

Where the ratification of a sale, or of certain proceedings, is relied on, the burden of proof is on the party alleging it, and facts must be established from which the *ratification necessarily results*, when there is no positive proof.

To give validity to a contract which is merely voidable, it must be deliberately, and upon examination, confirmed by the party, to be binding on him.

This is a petitory action, in which Francis and Zenon Rivas, seek to recover two undivided thirds of a plantation or tract of land, having twelve or thirteen arpents front on the Mississippi, with the usual depth, and claimed by the defendant.

EASTERN DIST.
*March*, 1839.

RIVAS'S HEIRS.
*vs.*
BERNARD.

The plaintiffs allege that said land was inherited by their father from his ancestor, and was his separate property, and that at his death he left only three heirs, (the petitioners and Virginie Rivas,) all minors, and that without their consent and in contravention of the forms of law required in such cases, the tract of land in question, has been illegally sold and taken possession of by the defendant. They pray for judgment, declaring them to be the lawful owners of two-thirds thereof, and for damages.

1. The defendant pleaded a general denial.

2. He avers that he is the lawful owner of the land sued for, having acquired the same at a sale made by the syndic of the estate of Marie Rivas, an insolvent debtor. That said sale was made in pursuance of a competent judicial order to that effect, and that respondent paid the price at which it was adjudicated, to the syndic. They aver that the title so vested in them, can only be annulled or contested in a regular action of nullity, to which the heirs and creditors of Marie Rivas should be parties.

3. He avers that the father of petitioners left his estate heavily encumbered with debts ; that after his decease his surviving widow caused the whole of the property belonging to the community to be adjudicated to her, and that among the community property so adjudicated, was the tract of land now claimed. That subsequently, finding herself unable to pay the community debts, or her own, she made a surrender of her property for the benefit of her creditors ; and that the land claimed was sold, and the proceeds of the sale appropriated principally to the payment of the debts contracted by Francis Rivas, the father of plaintiffs.

4. That the property surrendered by Marie Rivas, the mother of plaintiffs, sold for more than sufficient to pay all her debts, and plaintiffs, as her heirs, have received from the syndic their portion of the overplus, and given him an acquittance therefor, and thereby ratified all the proceedings in the surrender, and confirmed the title of defendant, they being at the time of full age.

5. That when the tableau of distribution was filed, the

plaintiffs were of full age, and appeared in court and made opposition on various grounds to the tableau of distribution, but did not set up title to the land now claimed, but on the contrary admitted it to have been the common property of their parents, and claimed as privileged creditors to be paid a large sum out of the proceeds of said sale.

6. He avers that after the surrender of Marie Rivas, she acquired some property, and that on her decease, the plaintiffs, who were then majors, took possession of her property and divided it between themselves and their sister, Virginie Rivas, without pursuing the forms of law, and that, thereby, they have rendered themselves liable as heirs, pure and simple, of their mother, and are estopped from asserting their present claim.

7. He demands that the heirs of Marie Rivas, and her creditors, be cited in warranty, &c.

Upon these pleadings and issues, the cause was tried.

It appeared in evidence that Francis Rivas, the ancestor of the plaintiffs, received this land partly by inheritance and partly by purchase from his co-heirs after his marriage; that the price he was to allow for it, (four thousand dollars,) formed part of the succession to be divided between the heirs.

The plaintiffs' ancestor died in possession of this property, which was put in his inventory as part of his estate, the 3d August, 1829. His widow, Marie Rivas, in pursuance of the advice of a family meeting, and an order of the Probate Court thereon, had all the property in the inventory of her deceased husband, adjudicated to her at its appraised value, the 23d November, 1829. She remained in possession under this adjudication until the 7th July, 1831, when she made a surrender of all her property to her creditors, including the tract of land in question, who appointed John Buhler, Esq., sheriff of the parish of East Baton Rouge, syndic. This property, with other effects, was sold by the syndic after the necessary formalities, and the land purchased by the defendant Bernard, for the sum and price of nine thousand one hundred dollars. The syndic filed his tableau of distribution, in January, 1835, and the plaintiffs, being then both of age,

made opposition, claiming to be creditors for a larger amount than was recognized by the syndic. These oppositions were dismissed, the parties failing to appear and prosecute them, and on the 3d of July, 1835, the tableau of distribution was homologated. The opponents made an unsuccessful attempt to have their opposition reinstated, but no appeal was ever taken by them. They received from the syndic the sums allowed them on the tableau.

The defendant's counsel relied on these acts of the plantiffs, as a full and complete ratification of the sale and adjudication of this property to their mother.

It appears in evidence that the syndic of Madame Rivas's creditors, filed his tableau of distribution the 14th January, 1835, in which he puts down the proceeds of the sale of her personal property at six hundred and fifty-eight dollars; slaves, at six thousand six hundred and nine dollars; land to Neilson, seven hundred and fifty dollars; do. to Arnous, one thousand dollars; do. to J. Bernard, (defendant,) nine thousand one hundred dollars; a lot in Baton Rouge, to Montegut, at three hundred dollars; in all, eighteen thousand four hundred and seventeen dollars. Among other creditors, he placed thereon, "Francis, Zenon and Virginie Rivas, heirs of Marie Rivas," (as creditors,) for four thousand seven hundred and sixteen dollars and sixty-three cents.

On the 21st January, these heirs (Francis and Zenon Rivas, being of full age,) filed their opposition to the tableau, in which they allege they are the lawful heirs of Francis Rivas, deceased, whose property, according to the inventory of his estate, amounted to twenty-two thousand six hundred and forty-nine dollars; and that, during the existence of the community, he received from his father's estate the sum of eleven thousand five hundred and seventy-nine dollars, and the acquests and gains were only three thousand and eighty dollars; one half of which belonged to these opponents as his heirs. That the said Marie Allain, (widow Rivas,) remained in possession of the undivided property of her and her late husband, until she was unlawfully divested of it, by surrender to Buhler, as syndic, &c. That their said mother took

possession of their share in their father's estate and never accounted for it, in consequence of which, they allege, they are the privileged creditors of their mother for the share inherited from their father, to wit: the sum of eleven thousand five hundred and seventy-nine dollars; and for two thousand dollars brought to the community by their mother, (Madame Rivas,) as her separate property; and further, they claim one half of the balance as common property, being the sole heirs of their father.

The opponents then pleaded exceptions to various parts of the proceedings of the creditors and syndic, receiving and selling the property so surrendered by their mother, and set up several vices and errors in the formalities of the proceedings: finally, they allege that the syndic improperly and wrongfully placed them on the tableau, as heirs of Madame Rivas, when they never had assumed that quality, and that instead of being placed on the tableau as creditors for four thousand seven hundred and sixteen dollars and sixty-three cents, they ought to have been entered as privileged creditors of their father's estate, in the sum of thirteen thousand one hundred and nineteen dollars, and not as heirs of their mother's insolvent estate. They reserve all their rights, and in opposing the homologation of the tableau, pray that it be so amended as to conform to and allow them their claims as set up by them.

When this opposition was called up for trial, Zenon Rivas was dead, and no one appearing for them, the opposition was dismissed.

*Buhler*, who was syndic of the creditors of Marie Rivas, was called as a witness for the defendant. He states he paid F. Rivas the full amount due to him, out of the proceeds of his mother's estate, as placed on the tableau. He proved the signature of F. Rivas to a paper offered in evidence, to show he had made himself responsible for the payment of one of the debts placed on the tableau. Objected to, because F. Rivas was a minor at the time. Admitted, the objection going to the *effect* and not to the competency. Witness said he had no money of F. Rivas, except what was allowed him

EASTERN DIST.
March, 1839.

RIVAS'S HEIRS
vs.
BERNARD.

on the tableau of distribution. Rivas called on him for the money.

Witness further states that Z. Rivas paid him, as syndic, the last note due by Arnous, for the price of property purchased by him at the sale of Mrs. Rivas's estate. Witness was not indebted to Z. Rivas in any other manner, than as stated on the tableau. Witness proved signature of F. Rivas to a paper, offered to prove his acceptance of the amount appearing to be due him on the tableau, and to show his acquiescence in the proceedings, &c. Objected to, because the paper was written while F. Rivas was a minor. Admitted, the objection going to the effect of the evidence only.

The defendant offered in evidence the record of the suit of *Marie Rivas* vs. *Her Creditors,* to show how much of the proceeds of the sale of the property surrendered was appropriated to the payment of the community debts, and it appearing the vouchers were not endorsed, as having been filed by the clerk, parole evidence of J. Buhler, syndic, was offered to make their proof : objected to and admitted, and a bill of exceptions taken.

The plaintiffs then moved to strike out all the evidence of Buhler, because it appeared that at the time of the death of Rivas, the father, the plaintiffs were minors, and that Buhler illegally and wrongfully took possession and administered their estate and is liable to them. The motion was overruled and the plaintiffs' counsel excepted.

From the foregoing evidence, the district judge was of opinion the plaintiffs were bound, by the proceedings had in the surrender, sale and distribution of the proceeds of the property surrendered, and that they could not be permitted to attack these proceedings collaterally. That not having appealed from them, or instituted an action of nullity to set them aside, they are precluded from a recovery in the present suit.

The district judge was also of opinion the evidence showed that the plaintiffs had rendered themselves liable, as heirs pure and simple of their mother, by taking possession and appropriating to their own use the property of which she died

possessed. Judgment was, therefore, rendered for the de-
fendant, from which the plaintiffs appealed.

*Elam* and *Barton*, for the plaintiffs.

I. The inventory establishes that this property formed part of the estate of plaintiffs' grand-father. He died intestate, leaving four children. Hence the father inherited an undivided fourth. He entered into an agreement with his co-heirs, by which he was to acquire the remaining three-fourths, at the price of three thousand dollars, payable in four equal annual instalments, &c.

Before the last instalment of the price fell due, to wit, on the 30th of December, 1817, the parties had a conventional liquidation and partition of the estate. Each heir was entitled to eleven thousand five hundred and seventy-nine dollars forty-one and three-fourth cents ; and as part of the share of plaintiffs' father, we find this property allotted to him at the price of four thousand dollars. From this it is evident, that the plaintiffs' father inherited one-fourth of this property, and paid for the remaining three-fourths out of the proceeds of his share of the inheritance. This constitutes it separate estate under our laws.

II. The adjudication to Madame Rivas was absolutely null, and did not pass the land.

1st. Because it was separate property. The minors did not hold it in common with her, and none but property so holden can be adjudicated to the father or mother of minors. *Louisiana Code, article* 338. But had it been holden in common, the adjudication is void, because the same article requires that there shall be an "estimation by experts" of the property, after the family meeting have advised the adjudication ; and here the property was taken at the original appraisement.

2d. As a sale it was void. The adjudication was a sale, and nothing else. It contains all the elements and properties of a sale. There is the thing parted with, and acquired, its price and the consent of one party, and an essay towards those legal formalities, which (fully and exactly complied

with) supply the consent of the others. If a sale then, why was it void? because the tutrix purchased of her pupils, which the law forbids. *Louisiana Code,* 327. But it was void for want of other formalities.

III. The insolvent proceedings as to the land were void, and did not pass it to the purchaser.

1. Because Marie Rivas could not make a cession of property which did not belong to her.

2. The plaintiffs, being minors at the time of the cession and sale, and the land being exclusively theirs, no alienation thereof could be legal without the ministration of the Probate Court; the District Court being wholly without jurisdiction.

3. The plaintiffs were not placed on the bilan of Marie Rivas, nor in any wise represented in the *concurso,* and hence are not bound thereby. *Bainbridge* vs. *Clay,* 3 *Martin, N. S.,* 262. *Thomas et al.* vs. *Breedlove et al.,* 6 *Louisiana Reports,* 575. As to citation of creditors, see 2 *Moreau's Digest,* 426, *section* 8. *Louisiana Code,* 3054. The syndics and creditors were bound to have the minors legally represented, under the penalty of intermeddling. *Louisiana Code,* 3283. 11 *Louisiana Reports,* 4. *Ibid.,* 409.

4. The property was not sold agreeable to law. There was no *procés verbal* of the sale. The deed being *exparte* as to us, the recitals thereof can have no effect against us; and we are not otherwise apprised by the proof of there having been a public sale, but by a recital to that effect in the deed, afterwards made. None but a public auctioneer could have sold the property. There being no evidence to establish that this was a public sale, made in the manner required by law, it must be considered as a private sale. Such a sale could not be made of the property embraced in an insolvent's cession. See Act of 1826, 2 *Moreau's Dig.,* 437, *sec.* 3. Again, these irregularities of the syndic, constituted him a tutor, *in his own wrong;* and as tutor, he is expressly forbid to make a private sale of his ward's property; such a sale is not a relative but an absolute nullity. *Fletcher et al.* vs. *Cavelier,* 4 *Louisiana Reports,* 269. The plaintiffs not being divested of title by

these proceedings, the next inquiry is, how far their rights
were affected by the homologation of the syndic's tableau of
distribution.

IV. The judgment homologating the tableau of distribution is not *res judicata*, as to us.

It is true the plaintiffs filed their opposition to this tableau, but it is not true that the merits thereof were ever discussed, considered, or decided upon. The counsel has strangely confounded the facts, by not giving them their proper order of precedence, as they are found upon the record. The judgment declares, that opponent's counsel being dead, and they being called, and not present to prosecute their opposition, that the same be *dismissed,* and it *then* proceeds to homologate the tableau. Now, it is clear from this, that the same document comprises two judgments, entirely distinct and several in their natures : 1st. A judgment of dismissal. 2d. A judgment of homologation ; and by force of that dismissal, the plaintiffs ceased to be parties to the tableau *before* the judgment homologating it was rendered. Hence we say that judgment is not *res judicata,* because,

1st. *It was a judgment of non-suit.* A judgment of *dismissal* is nothing more than a judgment of *non-suit.* The terms are strictly synonymous when applied to coercive non-suits by the court, contra-distinguished from voluntary non-suits, by a party, and none of these are *res judicata,* and the party may bring his action anew on paying costs, etc. *Code of Practice, articles* 491, 492, 536 ; 1 *Martin, N. S.,* 165 ; 6 *ibid.,* 331 ; 7 *ibid.,* 365 ; 2 *Louisiana Reports,* 429.

2nd. We were not parties to judgment of homologation, nor placed upon the bilan. A judgment can never have the effect of *res judicata* against persons not parties to it. Even where a person has claims in different capacities against an insolvent estate, and is regularly cited as to one, and votes for syndic, the judgment of homologation is no bar to his other claim, provided he receives nothing under the tableau. 6 *Louisiana Reports,* 576. When a party's claim is dismissed, he is no longer a party to the suit. 3 *Louisiana Reports,* 514 ; 4 *ibid.,* 324.

3rd. The demand is not the same, nor between the same parties, in the same quality. It has been strenuously urged, that this judgment could only be assailed by appeal, or action of nullity. This has been conclusively replied to already, in showing we were not parties to it, that it is not for the same cause, etc. We have another answer fully as complete. It is a settled principle of our jurisprudence, that wherever an action of nullity would lie, to annul a judgment, or a contract, etc., the same party may oppose the enforcement of either, by way of exception. Hence, the *exception of nullity*, opposed to such judgment or contract, etc., operates to the same extent and with the like result, as would the *action of nullity*, brought for their dissolution. *Code of Practice, article 20 ; Louisiana Code, articles 1875, 1876, 2042 ; 1 Martin, N. S.*, 468 ; *3 ibid.*, 695 ; *2 Louisiana Reports, 39 ; 3 ibid., 245.*

If, then, this judgment forms no bar to our recovery, the plaintiffs must recover, unless they have ratified the sale, and we maintain,

V. *There has been no ratification :—*

It is alleged, 1st. That the plaintiffs' opposition to the tableau, and claim of proceeds of sale, ratified it.

We answer, that the language of the opposition is that of the counsel who filed it, and he not being *attorney in fact*, it cannot bind the parties as a *judicial confession. Louisiana Code, article* 2270.

2nd. If receiveable at all, it cannot be divided, against us ; and it denounced, as radical and absolute nullities, the whole proceedings against us.

3rd. The dismissal of the opposition placed all *its* admissions and averments *dehors* judicial cognizance.

It is alleged, 2nd., That the plaintiffs, by taking possession of their mother's estate at her death, without the authority of justice, made them her heirs, pure and simple, and bound them to warrant all her acts.

We answer, the whole of her estimated property was seventy-eight dollars ; that is, twenty-six dollars to each heir, and comes within the principle of *de minimis non curat lex ;* an amount not equal to the funeral expenses, which the

law permits, without construing it into an acceptance of the
succession.   See *Louisiana Code, article* 995 ; 3 *Louisiana Reports,* 549.

It is alleged, 3dly, and lastly, That the plaintiffs have ratified the sale of the land, by receiving the price thereof.

The father of plaintiffs, during his marriage, inherited property to the value of eleven thousand dollars.   This includes the land in controversy, valued at that day at four thousand dollars.   At his death, his heirs became privileged creditors upon his estate to the amount of the inheritance.

The aggregate of the syndic's sale amounted to eighteen thousand dollars, of which the land in controversy brought nine thousand dollars.   The community debts, as exhibited upon the bilan of Marie Rivas, amounted to six thousand dollars.   It results, that the heirs were entitled to three thousand dollars of the proceeds of the sale, independent wholly of the price of the land, nine thousand dollars.

The only amount shown by the record to have been received by Zenon Rivas, was one thousand three hundred dollars, and this was some two years *before the tableau was filed.*   The only *written* evidence, as to the amount Francis Rivas has received, shows two hundred and fifty dollars. There is no evidence whatever that either of them received any thing *after* the homologation of the tableau ; nor do the receipts in any wise connect or identify the acknowledgment of payment therein expressed, with the price of this particular property.

It having been made manifest that the heirs were not divested of title, by the adjudication to Marie Rivas, nor by her *cessio bonorum,* nor the sale of the syndic, it follows, that Bernard is without title, unless those receipts, *(which do not mention the land,)* coupled with the oral declarations of the syndic, that he has paid other moneys to F. Rivas, can confer a title !   That syndic, too, having brought upon himself the penalties of an *intermeddler, a tutor in his own wrong,* thereby became incompetent, from interest, to prop up even that frail miniment of title !   No case with us has gone to this length ; it is altogether without precedent.

EASTERN DIST.
*March*, 1839.

RIVAS'S HEIRS
*vs.*
BERNARD.

The cases cited from 10 *Martin*, 734; 6 *Louisiana Reports*, 601; 7 *ibid*., 34; 5 *ibid*., 520; 9 *ibid*., 291, 293; are all clearly distinguishable. Most of them were ratifications by authentic acts, and the others by explicit recognitions.

What constitutes an act of confirmation, or a voluntary execution of an obligation, etc., is explicitly set forth in our code, to this extent—that the former is valid only when it contains *within it* the substance of the obligation confirmed; and the latter, when it shall be executed *in due form*. *Louisiana Code, articles* 2251–2; *also, articles* 2255, 2214, 2215.

The adjudications elsewhere are fully accordant. They establish that no act of ratification can be opposed to a party, which was not clearly designed as such by the party making it; nor then, unless it appears that he was fully apprised of his rights, and *especially* of his right, to be relieved from the act claimed to be ratified. See *Newland's Equity Contracts, first American edition, from page* 496 *to* 502; *ibid*., 435 *to* 444; 2 *Vernon*, 121; 1 *Wilson*, 320; 3 *Pierre Williams*, 292, and notes; 3 *Brown's Chancery Cases*, 117; 2 *Vescy, jr*., 199; 2 *Schoales* and *Lefroy*, 48; 1 *Ball* and *Beatty*, 330; 11 *Sergeant* and *Rawle*, 305; 1 *Story's Equity Jurisprudence*, 303, chapter 7, section 307; *ibid*., 338, chapter 7, section 345.

*A. N.* and *R. N. Ogden*, for the defendant, contended, that the original title to the land in controversy was derived by purchase of F. Rivas, the ancestor of the plaintiffs, from his co-heirs, for the sum of four thousand dollars. This acquisition was made during the marriage, and three-fourths of it at least was community property; the other fourth being his share, in the inheritance with his co-heirs of their deceased ancestor.

2. On the death of F. Rivas, the adjudication of this property to his surviving widow, at the estimative value and in pursuance of the advice of a family meeting, vested in her a good and valid title. But if there were any irregularities in the proceedings, they could only be taken advantage of, or attacked by a direct action of nullity. 7 *Martin, N. S.*, 180. 7, *Louisiana Reports*, 17. 10 *Ibid*, 264.

3. It also appears from the evidence, that this, with other property, was surrendered by Madame Rivas to pay the debts of the community, which the plaintiff's ancestor, her late husband, had contracted as the head of the community, and was bound to pay. It is shown too, that the plaintiffs, as heirs of their father and mother, (for she died soon after the surrender,) appeared in their capacity of heirs, and claimed to be privileged creditors on the tableau presented by the syndic. They cannot now recover the property; on the contrary, they are bound to warrant the title to the purchaser. 6 *Louisiana Reports*, 601.

4. The plaintiffs having received after they *became of age*, the balance of the price of this very property, allowed to them on the tableau of distribution, have ratified the sale of the syndic, and cannot now be allowed to attack the sale and title. The decisions of this court and authorities, are express on this point. In the case of *Grounx et al. f. p. c.* vs. *Abat's Executors*, this court held, "that where the price of minors' property has been received by their tutor and placed to their credit on the tableau of distribution of the tutor's estate, which is homologated by a judgment unappealed from, the minors are precluded from setting up title to the property itself, &c." See 7 *Louisiana Reports*, 17 and 34, 2 *Louisiana Reports*, 155. 6 *Ibid.* 601. 8 *Toullier*, *Nos.* 508–9–10.

5. The ratification of the syndic's sale in this case was made by the plaintiffs after they obtained full age, by appearing and contesting the tableau of distribution, in claiming to be creditors for larger sums than were allowed them. They did not contest the validity of the sale of the property to the defendant; the scramble was for the *price* in the hands of the syndic. When their oppositions were overruled, they acquiesced without appealing, and received the respective portions allowed them from the syndic. There cannot be a stronger case of ratification than this. On the subject of *ratification*, see the case of *M'Donald* vs. *Catlett*, 11 *Louisiana Reports*, 503–4. *Baham* vs. *Baham, ibid.* 510; and *Foutelet et al.* vs. *Murrell*, 9 *Louisiana Reports*, 291, 299.

*Eustis, J.*, delivered the opinion of the court.

The plaintiffs claim two-thirds of a tract of land situated on the left bank of the Mississippi, about nine miles below the town of Baton Rouge, having from twelve to thirteen arpents front, which they allege belonged to their grandfather, and at a partition of his estate, was set over to their father ; that at his death it descended to them and their sister, who is not a party to this suit ; that the defendant, Huntstock, has illegally taken possession of it. They pray judgment, that they be declared to be the lawful owners of two-thirds of the land, and be put in possession thereof, and for damages, and also for the rents and profits, during the time of the adverse possession of the defendant.

The defendant, Huntstock, disclaimed, and alleged that he was in possession as the tenant of the defendant, Bernard, who became a party to the suit, and set up title.

He alleged that he was the owner of the land in dispute, having purchased it at a public sale made by the syndic of the creditors of the late Marie Rivas, the mother of the plaintiffs, for the sum of nine thousand dollars ; that the sale was in all respects regular, and that he paid the purchase money to the syndic ; that at the death of the plaintiffs' father, he left his succession encumbered with a large number of debts, and that the property in question, which was *property of the community, was lawfully adjudicated to the* mother of the plaintiffs, who became embarrassed in her affairs, and finally made a cession of property to her creditors ; that this tract of land was sold with the other property ceded ; that all the proceedings of the adjudication, cession, and the syndicate have been in conformity with the laws ; that the property ceded was sold principally for the purpose of paying the debts for which the community was liable ; that the plaintiffs afterwards became parties to the tableau of distribution filed by the syndic, and opposed the same, and that they received their shares of the proceeds of the sale ; that they, as heirs, took possession, and disposed of the effects left at the decease of their late mother, and thereby became bound, as warrantors, to defend and make good the defendant's title.

There was judgment in the court below for the defendant,
and the plaintiffs have appealed.

We do not consider that the acts done by the plaintiffs, in relation to the effects of the succession of their mother, bind them absolutely as her heirs.

The property in litigation between the parties belonged to the grand-father of the plaintiffs. By an act passed between the heirs of the deceased grand-father, Francis took the land for the sum of four thousand dollars. It is true the terms "sell, bargain and transfer" are used, but we do not consider that they change the nature of the title by which the land was acquired. On the settlement of the estate, which afterwards took place, the purchase money is brought into the general account, and the share of each heir was fixed at the sum of eleven thousand five hundred and seventy-nine dollars and forty-one and three-eighths cents.

We think that the father of the plaintiffs, in point of fact, acquired this property from the succession of his father, as part of the effects thereof, and that it was his separate property, and formed no part of the community which existed between him and his wife, the mother of the plaintiffs.

In 1829, the father of the plaintiffs died, leaving the plaintiffs and their sister minors, and by a decree of the Court of Probates, the property left by the deceased husband, and held in common between the surviving wife and her minor children, was adjudicated to her at the appraised value of the inventory. In the decree of the court, the property which was adjudicated to the wife, as community property, was described to be that contained in the inventory, among which this tract of land was included.

By the article 338, of the Louisiana Code, the adjudication of property held in common between the surviving parent and their minor children, alone is authorized. The separate property of the minor can only be alienated in the forms prescribed by law. We conclude, therefore, that the interest of the minors in this land did not pass by the adjudication of the common property, supposing it to be in every respect legal as to the property affected by it.

By the article 339, of the Louisiana Code, the adjudication of property held in common between the surviving parent and their minor children, is alone authorized. The separate property of the deceased parent descends to his children, and can only be alienated in the manner prescribed by law, for the sale of minors' property.

If the land did not pass to the mother of the plaintiffs by the adjudication, it is clear that she had no right to cede it to her creditors, and they had no right to dispose of it. The sale by the syndic could, therefore, convey no title to the defendant, unless the plaintiffs have done some act which amounts to a ratification or a voluntary execution of the sale.

The plaintiffs, with their sister, were placed on the tableau of distribution filed by the syndic, for the sum of four thousand seven hundred and sixteen dollars and sixty-three cents ; but by an opposition, they alleged their claims on the estate to be the sum of eleven thousand five hundred and seventy-nine dollars and forty-one cents, the amount which their father had from the succession of their grand-father, which, however, it must be observed they urged hypothetically ; they allege that all the proceedings of the cession are null and void, and pray that the tableau of distribution be set aside as well as all proceedings had in the case ; but should the court maintain the proceedings, and hold them to have been lawfully conducted, they then in that event pray that they be placed on the tableau according to their rank as privileged creditors for the amount last mentioned. This opposition was dismissed, and we can see nothing in it which looks like a confirmation of the sale made by the syndic ; on the contrary, it denies and contests the validity of the whole proceedings in the strongest terms.

Our attention has been directed to some facts which it is contended amount to a ratification of the syndic's sale on the part of the plaintiffs. The sale took place on the 26th of September, 1831. The tableau of distribution was not filed until the 14th of January, 1835. The opposition of the plaintiffs was filed on the 21st of January, and the decree homologating the tableau was dated on the 3d of July, 1835. The plaintiffs were not placed on the schedule presented by their mother, but were on the tableau of distribution, as before stated. Beside the tract of land sold to the defendant, there were two other tracts of land, a house and lot, and several slaves, ceded by their mother to her creditors, and sold by the syndic on the 26th of September, 1831. It

appears, that on the 27th day of June, 1835, Mr. Buhler, the sheriff of the parish of East Baton Rouge, who was the syndic, paid on the order of Francis Rivas, one of the plaintiffs, the sum of two hundred and sixty-nine dollars and eighty-four cents; this payment was made to a judgment creditor of Rivas. But at this time the opposition of the plaintiffs contesting the validity of the proceedings was pending. The payment of *this money*, or the receipt of it, under these circumstances, by himself, unless the order or the receipt specified it, we do not think is an acknowledgment of having received a part of the price of the land in question. There is nothing in his order or in his letter from which this can be inferred.

There is a receipt of Zenon Rivas for the amount of two instalments due for property bought by Arnous, which he afterwards had purchased. This was received on account of the portion that might be due him, after the settlement of the estate of his mother. But this receipt is dated on the 16th of September, 1833, nearly sixteen months before his name appeared on the tableau of distribution. This can be considered as ratifying nothing but the sale to Arnous.

Mr. Buhler, to whose testimony we desire to give full weight, states, that he has paid the amount due to Francis Rivas, according to the tableau: but he does not state the time nor the circumstances, so that we can ascertain whether an approval of the sale necessarily resulted from this act. The proceedings in this case have been conducted so loosely, and the parties plaintiff appear throughout to have been so ignorant of their rights, that it is with the greatest caution we should establish inferences to their detriment in relation to what is or what is not, an approval of the proceedings. We must be satisfied, before we can pronounce that this sale is binding on the parties plaintiff, that they have ratified it. Facts, in a case like this, must be established, from which the ratification necessarily results. The burden of proof is on the defendant. For the doctrine of ratification, as established in England and the United States, see *Story's Equity Jurisprudence, section* 307, *and the authorities therein referred to.*

To give vali-
dity to a contract
which is merely
voidable, it must
be deliberately,
and upon exami-
nation confirmed
by the party, to
be binding on
him.

nation confirmed by the party. In the case of a voluntary
execution of a contract, under the article 2253 of the Louisi-
ana Code, the party executing it is presumed to know the
defects which may exist in it, and to waive them by his free
consent. See *8th Toullier, number 519, Commentary on the
article 1338, Code Napoleon.* But in all cases there must be
no question as to the fact of execution. This case turns upon
the fact of a voluntary execution, or the want of it. All the
acts of the plaintiffs can be accounted for, without a ratifica-
tion of the sale necessarily resulting from them, and we are
of opinion that no such ratification or voluntary execution
has been proved. We conclude, therefore, that the land in
dispute originally belonging to the plaintiffs' grand-father, was
held by their father as his separate estate, that at his death
it descended to them and their sister as his heirs; that the
property in it remained in them during their minority, up to
the present time, unaffected by any of the proceedings under
consideration, and now of right belongs to them.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be reversed, and that the
plaintiffs recover from the defendant two-thirds of the tract of
land described in the plaintiffs' petition, and in the defend-
ant's possession, and that the District Court proceed to make
a partition thereof according to law, and to ascertain and
establish the value of the improvements made by the defend-
ant on the premises, and his claim against the parties called
in warranty; and that no writ of possession issue in this case,
until the parties plaintiff shall have paid to the *defendant* the
value of his improvements; and that the appellees pay costs
in both courts.