## Cobb et al *v.* Parham et al.

An award rendered by amicable compounders cannot be revised by the court for errors of judgment; it can only be attacked for fraud or usurpation of power on the part of the auditors.

An award of arbitrators, not binding on account of the want of authority from a married woman to her husband, who had agreed, in the name of the former, to an extension of the time for making the award, and in consequence of its not having been duly homologated, will be rendered valid by a subsequent execution of it by the parties. Its execution by the wife would cure the want of original authority in the husband, and the execution of the award by the parties would entitle them to its benefits, as fully as though it had been duly homologated.

To confirm an act not binding on a party a formal instrument is not indispensable. Its voluntary execution involves a renunciation of the exceptions which might have been opposed to it.

A partial execution demonstrates, as well as an entire execution, the wish to confirm a defective act. It is a tacit approval.

APPEAL from the District Court of Madison, *Selby*, J. *Bemiss*, *Prentiss* and *Gaither*, for the appellants. *Thomas*, for the defendants. The judgment of the court was pronounced by

SLIDELL, J. The transactions out of which the present suit has grown, began under relations of intimacy and good will, which were followed by mutual complaints and controversy. After an acrimonious litigation, the parties seem to have reflected for a time upon its injurious consequences to themselves and and their creditors, and to have made an agreement to submit the matters in dispute to arbitrators, whom they clothed with the authority of amicable compounders. The controversy involved a large estate called the "Buckhorn plantation," of which *Mrs. Cobb* and *Lowry*, were the joint proprietors, and the settlement of mutual accounts and claims. Among other powers vested in the arbitrators was that of deciding in what manner the plantation and slaves should in future be managed and controlled, and what disposition should be made of the crops, in whose name they should be shipped, and by whom applied until the claims against it should be liquidated. The then existing crop was placed under the control of the arbitrators. The submission was signed by *Mrs. Cobb*, her husband, and *Lowry*, in July, 1846, and the arbitrators were required to render their award on or before the 10th February, 1847. It being found that the award would not be prepared at the time stipulated, an agreement for extension until the 15th March, was signed on the 18th January, 1847, by *Lowry*, and by *Cobb* in his individual name, and as agent of his wife. The arbitrators rendered their final award on the 15th March, 1847. It was spread upon the minutes of the court at the ensuing October term, upon the *ex parte* motion of *Lowry*; and on the like *ex parte* motion it was made the judgment of the court.

On the 7th January, 1848, *Mrs. Cobb* and her husband instituted the present suit. Her petition states the ownership of the plantation and slaves by herself and *Lowry*; that she had for many years the management of it, and of the crops, employing her husband as the overseer; that the defendant *Parham*, pretending to derive authority from the award of certain arbitrators, was about to deprive her of the control and supervision of the estate, and prevent her

from exercising her right of ownership over it. To prevent the injury that would arise from *Parham's* alleged usurpation, she asked and obtained an injunction. The defendants denied the right of the plaintiff to the supervision and control, and justified the acts of *Parham* under the award of the arbitrators.

The true question in the cause is, the binding force of the award upon the plaintiff. If it be binding, the judgment of the court dissolving the injunction cannot be disturbed.

It is conceded by the defendants that the award has not been duly homologated. It is also conceded that, no express authorization by *Mrs. Cobb* to her husband to extend the time for making the award has been proved. But they contend that a formal homologation is not necessary where the parties have themselves executed the award; and that the absence of an express authorization from the wife to extend the time, and the consequent defectiveness of the award, are cured by her voluntary execution of it.

We concur in opinion with the defendants' counsel, that an award rendered by amicable compounders could not be revised by the court for errors of judgment, and could only be attacked by reason of fraud or usurpation of power on the part of the auditors (see *Canty* v. *Beal*, 17 La. 285. *Davis* v. *Leeds*, 7 La. 477); and that, in the absence of objections of that nature, the execution of the award by the parties would entitle them to its benefit, as fully as though it had been duly homologated. We also concur with the counsel for the defendants, that a subsequent execution by the wife, would cure the want of an original authority in the husband to assent for her to the extension of time.

This brings us to consider the facts upon which the defendants rely, to show an execution of the award by *Mrs. Cobb* and her husband. To appreciate them a brief notice of the terms of the award will be necessary.

The arbitrators, by their award, divested both *Lowry*, and *Cobb* and wife, of all personal control of the estate and its cultivation, leaving *Mrs. Cobb* however, the privilege of occupying a dwelling house on it. They appointed *Parham* to take its entire control and administration. He was required to manage the property as a prudent administrator; was empowered to employ and discharge overseers, who were to be governed by him alone, and not to be under the control of the joint owners, a special authorization being given to him to employ *Cobb* in that capacity if he should so desire. He was to ship the crops in his name as agent, and control the proceeds, subject to the instructions given by the award. These were to apply the product of the estate, first to the payment of its expenses; next to the payment of certain yearly allowances for the individual use of *Mrs. Cobb* and *Mr. Lowry*; and then to the payment of the mortgage debts due to *Burke, Watt & Co., Hynes*, and the heirs of *Mitchell*. His administration was to continue until January, 1850. Provision was made for the subsequent partition of the estate; also for the appointment by the district judge of a suitable person to act in his place, in the event of his death, removal, or inability. The whole character of the award points to the withdrawal of the estates, for the time being, from the hands of the proprietors, whose interference, as demonstrated by their former quarrels, was deemed incompatible with the true interests of themselves and their creditors.

Under this award we find *Parham* entering upon his administration. *Burke. Watt & Co.*, the former factors, recognized him as agent of the estate, and paid over to him, or upon his drafts as agent, the funds in their hands proceed-

COBB
v.
PARHAM.

ing from the crops shipped by him &c. Under the eye of *Mrs. Cobb*, who continued to occupy the dwelling house, her husband was employed as an overseer by *Parham*, and received his pay as such, through *Parham's* draft as "agent of Buckhorn" upon the New Orleans factor. *Mrs. Cobb* received upon *Parham's* draft, her allowance of $1,000; she also received another sum which was ordered by the award to be paid to her, and which was accordingly, by written directions of the arbitrators, placed to her credit by *Burke, Watt & Co.* During a period of several months there appears to have been no attempt on her part or that of her husband, to interfere with his administration, thus conducted in their presence.

All these facts, as well as others which it is not necessary to detail, can be regarded in no other light than as an assent to, and execution of, the award by the plaintiffs. To confirm an act not binding upon a party, a formal instrument is not indispensable. A voluntary execution involves a renunciation of the exceptions which might have been opposed to it.

It is said, however, that, by consenting to receive the proceeds of her own crops, *Mrs. Cobb* should not be prejudiced, for in doing so she received what was her own. The answer is, they were not her own. *Lowry* was her co-proprietor. Having received them from *Parham*, who expressly declared himself to be the agent of both parties under the award, to repudiate his capacity afterwards would involve a legal fraud both upon him and upon *Lowry*.

It is equally inadmissible to say that, the plaintiffs could thus partially execute the award and repudiate those portions of it which were not directly comprehended in the execution. " L'exécution partielle demontre, comme l'exécution totale, la volonté de confirmer l'acte vicieux; c'est une approbation tacite. Duranton, vol. 13, § 280. See also *Kinnard* v. *Harris*, 2 B. & C. 801. The award was entire, and the plaintiff having accepted its benefit, must take its burdens.

It has been objected that *Lowry* had himself acted against the spirit of the award, by attempting to buy out creditors, for the purpose of using their claims to oust the plaintiff. The testimony on this subject is conflicting, and at most established only negotiations to that end. The unconsummated intentions of the defendant cannot effect his right under the award.

*Judgment affirmed.*