The facts out of which this litigation grows are somewhat unusual. Two young women, Agnes Kothe, an unemancipated minor, and Mrs. Lossie Von Behren, attended an institution described as the "Methe School of Beauty Culture". In August, 1940, they agreed that following their graduation from this school they would form a partnership and operate a beauty culture business provided both of them succeeded in passing such requirements as are imposed by the Louisiana State Board of Health. It seems that in order to go into the beauty business certain machinery is necessary and in anticipation of the new partnership the young *Page 572 
ladies applied to the Gulf Supply Corporation, a concern which deals in such machinery for the purpose of purchasing about $400 worth of equipment. Miss Kothe withdrew from the Central Homestead Association $121.50, which that company had to her credit, in order to make a cash payment on the equipment. Because Miss Kothe was a minor, the Gulf Supply Corporation refused to do business with her, whereupon a contract was entered into by the Gulf Supply Corporation with John Von Behren and his wife, Mrs. Lossie Von Behren, and Miss Kothe's money was used as the down payment. The Von Behrens signed chattel mortgage notes, secured by the machinery, for the remainder of the purchase price. While affairs were in this state Miss Agnes Kothe married Harold Melancon. Melancon objected to his wife going into the beauty business, and Mrs. Melancon then attempted to withdraw. Failing to get her money from either the Gulf Supply Corporation or the Von Behrens, she brought this suit against all of them asking for a judgment in solido.
The Gulf Company denied having any contractual relation with Mrs. Melancon nee Kothe, and averred that it had sold the equipment to the Von Behrens and no one else.
The Von Behrens, in compliance with the rules of the First City Court, in which the suit was brought, filed exceptions of misjoinder and of no cause of action and, at the same time, their answer, in which the defense of ratification was made.
The judge, a quo, dismissed the suit as against the Gulf Supply Corporation and rendered judgment as prayed for against the Von Behrens. The Von Behrens alone have appealed, consequently, the Gulf Company is not before this court.
The exceptions appear to have been abandoned, as they were not considered in brief or in oral argument.
The minority of the plaintiff at the time the partnership agreement was entered into is conceded. The fact that a minor may not lawfully enter into a contract of partnership is not and cannot be disputed. Article 1785 of the Revised Civil Code reads in part as follows:
"* * * the minor is incapacitated from contracting, but his contracts may be rendered valid by ratification, either expressed or implied, in the manner and on the terms stated in this title under the head: Of Nullity or Rescission of Agreements".
See M.M. Sanders Son v. Schilling, 123 La. 1009, 49 So. 689.
Article 2228 of the Revised Civil Code declares that "he [the minor] can not make void the engagement which he has subscribed in his minority, when once he has ratified it in his majority, whether that engagement was null in its form, or whether it was only subject to restitution".
Article 379 of the Code provides that "the minor, whether male or female, is emancipated of right by marriage", and Article 382 that "the minor, emancipated by marriage, does not need the assistance of a curator in any act or proceeding; provided that whenever a minor emancipated by marriage shall reach the age of eighteen years the said minor shall be relieved from all the disabilities which attach to minors and with full power to do and perform all acts as fully as if the said minor had arrived at the age of twenty-one years".
In International Accountants Society v. Santana, 166 La. 671,117 So. 768, 770, 59 A.L.R. 276, affirming 7 La.App. 594, the question of a ratification after majority of a contract of a minor was considered. The plaintiff, a correspondence school, sued Santana on a contract which had been executed by him during his minority, whereby he agreed to pay a certain sum for lessons in accounting, which were to be sent to him by mail. The lessons were sent, but the minor, for some reason, returned them to the plaintiff and requested that he be relieved from any obligation under the contract. The school refused and, after Santana became of age, sued him alleging that the contract had been ratified by him after his majority, pointing to three small payments which Santana had made at long intervals in order, as he said, to help out a friend who acted as the local agent of the school, the local agent having represented to Santana that he would be liable for a certain amount of the contract price to his principal. The Supreme Court in affirming this court declared:
"The Court of Appeal, applying the well-settled rule of law that the ratification of a contract made during minority must be with the full knowledge of the *Page 573 
disability and with the clear intention to abandon all legal right to question its validity upon that ground, held that the payments made by defendant after reaching his majority were not of themselves sufficient to constitute ratification.
"In its application to the Court of Appeal for a rehearing, which was refused, plaintiff shifted its position somewhat, and argued that defendant was bound, not because he had ratified the contract, but because he had voluntarily executed it after becoming of age. This is the contention which plaintiff stresses before this court, resting it upon the second and third paragraphs of Civ. Code, art. 2272 * * *.
"Under the provisions of the codal article now relied upon by plaintiff, it is plain that in order to confirm an act not binding upon a party, a formal instrument is not indispensible, and that a voluntary execution involves the renunciation of the exceptions which might have been opposed to it. Cobb v. Parham, 4 La.Ann. 148. Nevertheless whether a void or voidable act be validated by a formal instrument or by its voluntary execution, there is no difference in the interpretation and legal effect of the respective methods which may be used for the purpose. In the one case the ratification is express and in the other case it is implied. To execute voluntarily is to execute with the intention to confirm and ratify. Celeste Sugar Co. v. Dunbar-Dukate Co.,160 La. 694, 107 So. 493; Augustin v. Farnsworth, 155 La. 1053, 99 So. 868; Sims v. Jeter, 129 La. 262, 55 So. 877. In either case the intention to ratify by the party against whom the act is opposed must be clearly and unequivocably shown. * * * No intention to ratify will be inferred when the act can be otherwise explained. Sims v. Jeter, supra. And in case of doubt the party against whom ratification or voluntary execution is claimed must have the benefit of the doubt. Succession of Easum, 49 La.Ann. 1345, 22 So. 364.
"The burden of proving the ratification or voluntary execution of the contract is on the plaintiff. Rivas' Heirs v. Barnard, 13 La. [159] 175. The defendant reached his majority on February 2, 1924. He never derived any benefit from the contract either before or after he became of age. Plaintiff's claim of ratification or voluntary execution rests entirely, therefore, on the fact that defendant made three payments of $5 each on an unexecuted contract between 13 and 21 months after he had reached his majority. But these payments do not necessarily show intention to ratify".
With these authorities in mind, we turn to the evidence in the record on the subject of ratification. Mrs. Von Behren testified that on numerous occasions the Melancons, both husband and wife, came to her house and discussed the opening of the beauty shop, which was to be established in the basement of the Von Behren's house and that it was not until some little time after the Melancon wedding that she had any intimation that Mrs. Melancon had abandoned the project at the behest of her husband.
Mrs. Loise Castay, one of defendants' witnesses, stated that after plaintiff's marriage she continued to declare her intention of opening a beauty parlor with Mrs. Von Behren and that about a week after the wedding she was present at a dinner given by the Von Behrens, the Melancons also being present, and that after dinner the Von Behrens and the Melancons discussed the opening of the beauty parlor. Mrs. Castay further stated that she, arising to the spirit of the occasion, offered to let the new partnership curl her hair.
Mrs. Goldie Cattan stated that she also was present at the dinner and heard the discussion concerning the opening of the beauty parlor and that she agreed to let them wave her hair.
To all of these witnesses the Melancons replied that they did not do or say any such thing, however, Mrs. Melancon admitted that prior to her marriage she got her uncle to make a number of "dresserettes", which the evidence does not describe but which, apparently, is something which is used in beauty parlors, and that after her marriage she sent them over to the Von Behrens.
On the whole, we are of the opinion that the evidence is insufficient to prove ratification. If it be sufficient to create a doubt, then the party against whom the ratification is claimed must have the benefit of the doubt. International Accountants Society v. Santana, supra. Certainly the defendants have failed to prove clearly and unequivocally an intention on the part of Mrs. Melancon to ratify the contract of partnership subsequent to her emancipation by marriage. *Page 574 
The relation of debtor and creditor exists as between Mrs. Melancon and the Von Behrens. The fact that no one has benefited by the contract with the Gulf Supply Corporation, except, perhaps, the corporation itself, is immaterial. The Gulf Supply Corporation dealt with the Von Behrens alone and the equipment which was sold to and bought by the Von Behrens was acquired under a contract whereby $121.50 of Mrs. Melancon's money was used for the cash payment. Presumably, the Von Behrens obtained satisfactory consideration under their contract. In any event, they must return Mrs. Melancon's money.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.