(117 So. 768)

No. 29207.

**INTERNATIONAL ACCOUNTANTS SOCIETY v. SANTANA.**

**In re INTERNATIONAL ACCOUNTANTS SOCIETY.**

June 4, 1928.

Weiss, Yarrut & Stich, of New Orleans, for applicant.

Deutsch & Kerrigan and Bert Flanders, Jr., all of New Orleans, for respondent.

ROGERS, J. Plaintiff is a corporation engaged in the business of teaching by correspondence through the mails. Its principal office is in the city of Chicago, and it operates agencies in other cities throughout the country for the purpose of promoting its business.

Defendant is a resident of the city of New Orleans, and on November 14, 1923, he signed an application for membership in the plaintiff society, entitling him to a course of instruction by correspondence in "higher accountancy." In this application, which consists of a printed form furnished by the plaintiff, is embodied an agreement on the part of the defendant to pay the enrollment fee of $155, of which $10 is to be paid in cash, and the balance is to be paid in monthly installments of $10 each. At the time of signing his application, defendant paid $10 to the local representative of the plaintiff, who acknowledged receipt thereof on the application itself. The application was then forwarded, presumably, by plaintiff's representative to the "home office in Chicago" for "official acceptance" by plaintiff. Later, plaintiff furnished defendant with certain lessons, of which, however, defendant did not avail himself. Upon receipt of the lessons, defendant addressed a letter to plaintiff, offering to return them, and requesting to be released from his contract. Plaintiff refused the offer, denied the request, and insisted on holding defendant to his agreement. Defendant did nothing further in the matter, except to make to plaintiff's local representative three small payments of $5 each at long intervals during a period of eight months, the last of said payments being made on October 24, 1925. Defendant having refused to make any further payment thereafter, plaintiff, on June 7, 1926, filed this suit in the first city court of New Orleans to recover a balance of $130 alleged to be due on defendant's obligation under the contract, which is styled in the petition as a promissory note.

The defendant, in his answer, pleaded that he was a minor at the time the contract was entered into. The agreement shows on its face that defendant was 20 years of age when he signed it. Plaintiff urged, as against the plea of minority, that defendant had ratified the contract by making the three payments of $5 each after he had reached his majority.

Judgment was rendered by the city court in favor of plaintiff as prayed for. This judgment was set aside by the Court of Appeal, which rejected plaintiff's demand. The record was brought here on a certiorari, and the case is now before us for review.

Plaintiff relies on Civ. Code, art. 1785, providing that a minor may, after reaching his majority, expressly or impliedly, ratify, in the manner and on the terms set forth in the Code, a contract made during his minority, and Civ. Code, art. 2272, reading as follows, viz.:

"The act of confirmation or ratification of an obligation, against which the law admits the action of nullity or rescission, is valid only when it contains the substance of that obligation, the mention of the motive of the action of rescission, and the intention of supplying the defect on which that action is founded.

"In default of an act of confirmation or ratification, it is sufficient that the obligation be voluntarily executed, subsequently to the period at which the obligation could have been validly confirmed or ratified.

"The confirmation, ratification, or voluntary execution in due form, and at the period fixed by law, involves a renunciation of the means and exceptions that might be opposed to the act, without prejudice, however, to the right of persons not parties to it."

In the Court of Appeal, plaintiff's contention, based on the codal articles, was, as shown by the original brief filed in its behalf, "that the minor (defendant) ratified the

contract or note by deliberately and knowingly making payments on account after majority." The Court of Appeal, applying the well-settled rule of law that the ratification of a contract made during minority must be with the full knowledge of the disability and with the clear intention to abandon all legal right to question its validity upon that ground, held that the payments made by defendant after reaching his majority were not of themselves sufficient to constitute ratification.

In its application to the Court of Appeal for a rehearing, which was refused, plaintiff shifted its position somewhat, and argued that defendant was bound, not because he had ratified the contract, but because he had voluntarily executed it after becoming of age. This is the contention which plaintiff stresses before this court, resting it upon the second and third paragraphs of Civ. Code, art. 2272, hereinabove quoted.

■ Under the provisions of the codal article now relied upon by plaintiff, it is plain that in order to confirm an act not binding upon a party, a formal instrument is not indispensible, and that a voluntary execution involves the renunciation of the exceptions which might have been opposed to it. Cobb v. Parham, 4 La. Ann. 148. Nevertheless whether a void or voidable act be validated by a formal instrument or by its voluntary execution, there is no difference in the interpretation and legal effect of the respective methods which may be used for the purpose. In the one case the ratification is express and in the other case it is implied. To execute voluntarily is to execute with the intention to confirm and ratify. Celeste Sugar Co. v. Dunbar-Dukate Co., 160 La. 694, 107 So. 493; Augustin v. Farnsworth, 155 La. 1053, 99 So. 868; Sims v. Jeter, 129 La. 262; 55 So. 877. In either case the intention to ratify by the party against whom the act is opposed must be clearly and unequivocally shown. Celeste Sugar Co. v. Dunbar-Dukate Co., supra; Wells v. Files, 136 La. at page

133, 66 So. 749; Sims v. Jeter, supra; Breaux v. Sarvoie, 39 La. Ann. 243, 1 So. 614. No intention to ratify will be inferred when the act can be otherwise explained. Sims v. Jeter, supra. And in case of doubt the party against whom ratification or voluntary execution is claimed must have the benefit of the doubt. Succession of Easum, 49 La. Ann. 1345, 22 So. 364.

■ The burden of proving the ratification or voluntary execution of the contract is on the plaintiff. Riva's Heirs v. Barnard, 13 La. 175. The defendant reached his majority on February 2, 1924. He never derived any benefit from the contract either before or after he became of age. Plaintiff's claim of ratification or voluntary execution rests entirely, therefore, on the fact that defendant made three payments of $5 each on an unexecuted contract between 13 and 21 months after he had reached his majority. But these payments do not necessarily show intention to ratify.

Larombiere says (as set forth in Breaux v. Sarvoie, supra):

"That, as the acts from which confirmation or ratification is sought to be deduced, have no value otherwise than as indicia of the intention on the part of him from whom they emanate, that intention can be inferred only from a voluntary execution, which must be enlightened, reasoned, and exempt from all error. Volume 4, p. 625, No. 35, § 3."

In 2 Greenleaf's Ev. § 367, the author says:

"There is, however, a distinction between those acts and words which are necessary to ratify an executory contract, and those which are sufficient to ratify an executed contract. In the latter case any act amounting to an explicit acknowledgment of liability will operate as a ratification; as in the case of a purchase of lands or goods if after becoming of age he continues to hold the property and treat it as his own. But in order to ratify an executory agreement made during infancy, there must be not only an acknowledgment of liability, but an express confirmation or new promise voluntarily and deliberately made by the infant upon his coming of age and with knowledge that he is liable therefor. An explicit acknowledgment

whether in terms or by partial payment is not alone sufficient, for he may refuse to pay a debt which he admits to be due."

In Robbins v. Eaton, 10 N. H. 561, we find an interesting discussion of the subject. The court says:

"Payment of part of a note is no ratification of the whole, because the infant may admit only an indebtedness to that extent. The ratification should be equivalent to a new contract. Therefore an express promise as to the whole debt is necessary. * * * There are numerous authorities to this effect; but these are cases where notes were given for articles which had been used or consumed prior to the infant's becoming of age. Where the matter constituting the consideration of the note is not in existence when the infant becomes of age, or is wholly beyond his control, there is nothing upon which an implied promise can arise, and an express promise to pay the debt can alone render the infant liable. The authorities are, therefore, correct, as limited to this class of cases. But where the consideration of the note is still in existence, in as perfect a state after the infant becomes of age as before, and is subject to his control, he may so deal with the articles or property forming such consideration, as to raise an implied promise of payment."

In Parsons v. Teller, 188 N. Y. 318, 326, 80 N. E. 930, 933, appears the following, which is pertinent here, viz.:

"It is not the case of an executed contract, where failure of an infant to disaffirm within a reasonable time after becoming of age would of itself operate as a ratification. It required affirmative action by the deceased to impose the obligations of the contract upon her. The alleged ratification in this case is based on the fact that during Mrs. Smith's life she continued to make payments under the agreement. * * * The record is devoid of evidence, except the mere fact of the payments, tending to show that the deceased intended to recognize the legal obligations of the contract, * * * and these payments, under the circumstances, we think, were insufficient for the purpose."

The case of International Text Book Co. v. Connelly, 206 N. Y. 188, 99 N. E. 722, 42 L. R. A. (N. S.) 1115, is on all fours with the one at bar. There the court, in an elaborate opinion, held that a partial payment made by a minor after becoming of age on a contract entered into during his minority for a course of instruction by correspondence in a correspondence school did not constitute a ratification of the agreement where the minor did not derive any benefit from the contract after he became of age, nor retain any benefit previously derived therefrom which could be returned.

The evidence in this case leaves no doubt that the defendant had no intention whatever of ratifying or executing the contract herein sued on. His formal declaration on the witness stand was that he made the payments in question to the plaintiff's local agent, who was a friend of his, in order, merely, to help him out, upon his representations that the local office was being held by the home office for a certain amount of money under the contract. This testimony was not only not contradicted but was virtually admitted to be correct by the plaintiff's local agent. The payments were made many months after defendant had become of age. No benefit under the contract was accepted or obtained by him in consequence of the payments. At most, their only effect was to constitute an admission on the part of the defendant of an indebtedness to that extent and not a ratification by him of the whole contract or note.

It was said by this court in O'Keefe v. Handy, 31 La. Ann. 836, and Tucker v. Lisle, 4 La. 328, that a contract made by a feme covert is ratified by a partial payment made after she becomes a feme sole. The cases are cited by plaintiff as analogous to the one at bar and as supporting its argument herein. In the former case, the two grounds of attack upon the mortgage were that the recitals in the certificate of the judge under the sanction of which the mortgage loan was contracted were false and fraudulent, and that to the knowledge of the mortgagee's agent the money secured by the loan inured to the benefit of the mortgagor's husband, by whose threats she was induced to execute

the mortgage. The court held against the plaintiff on both of the controverted questions. In addition to joining issue on her grounds of attack on the mortgage, defendant, by way of a further defense, set up that by making certain payments of interest due on the mortgage note after the death of her husband, the mortgagor ratified the contract which she assailed. In passing upon this defense, the court found that plaintiff had not bound herself for her husband, and, therefore, that the debt was an honest one, which she had contracted for herself and had received, at least prima facie, the benefit thereof.

We do not find anything contrary in this decision to the views hereinabove expressed. The cited case was one of an executed contract which plaintiff not only did not disaffirm within a reasonable time after she resumed the capacity of which, as a wife, she had been deprived during her marriage, but willingly continued to discharge by partial payments of interest during a period of several years.

The opinion of the court in Tucker v. Lisle contains nothing more than the declaration that the defendant was a "femme couverte" at the time she made the contract, but had ratified it by a partial payment after she became a "femme sole." The nature and extent of the contract sued on is not set forth, nor is the manner and condition under which the partial payment was made revealed. The decision therefore is of no authoritative value in reaching a conclusion in the case presently before us.

For the reasons assigned, the judgment of the Court of Appeal is affirmed, at the cost of the relator.

O'NIELL, C. J. (concurring). The words "confirmation" and "ratification" have one and the same meaning, and they are used in article 2272 of the Civil Code as synonymous terms. Wherever one of these words appears so does the other, viz.: "The act of confirmation or ratification," etc., and "in default of an act of confirmation or ratification, * * * subsequently to the period at which the obligation could have been validly confirmed or ratified. The confirmation, ratification, or voluntary execution," etc. The article is translated literally from the French text of article 2252 of the Code of 1895, which was copied verbatim from article 1338 of the Code Civil. In the French text the same expression is used, *"L'acte de confirmation ou ratification,"* and *"confirmée ou ratifiée,"* etc.; and never is either of the words, *confirmation* or *ratification,* used without the other.

*Voluntary execution* of an obligation, however, is another thing; as to which the Code provides that, if an obligation which was originally invalid for want of capacity in the party who entered into it has not been confirmed or ratified, it is sufficient if it has been voluntarily executed after the period at which it might have been confirmed or ratified. That means merely that an executed contract is not subject to revocation on the ground that one of the parties had not the legal capacity to make it, if it was executed after the party became legally capacitated. To illustrate, if the defendant in this case had paid the note in full after he became of age, he could not have recovered the amount on the ground that he was a minor when he made the contract. As it is, he cannot recover the partial payments which he made after arriving at the age of majority, the fundamental principle being that an obligation incurred by a minor, though not enforceable, is a *natural obligation* (Rev. Civ. Code, art. 1758), and "no suit will lie to recover what has been paid or given in compliance with a natural obligation," and "a natural obligation is a sufficient consideration for a new contract" (Rev. Civ. Code, art. 1759). But a partial payment on a natural obligation is not, essentially, a confirmation or

ratification of the entire obligation; it is merely a voluntary execution—as far as it goes—of a natural obligation, which, as far as it has been executed, is not subject to revocation. A partial voluntary execution of an obligation might, under some circumstances, constitute a complete ratification of the obligation, on the familiar idea that actions speak plainer, if not louder, than words, or, as our predecessors used to say, "La voluntad que se deduce del acto, es mas poderosa, que la que consiste en palabras." Chesneau's Heirs v. Sadler, 10 Mart. (O. S.) 735. I concur in the opinion that the voluntary partial payments made by the defendant in this case were not a complete ratification of the obligation.