## ANDREWS v. UNION PARISH SCHOOL BOARD.

### No. 5700.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Rehearing Denied June 30, 1938.

Writ of Certiorari and Review Granted Aug. 5, 1938.

T. C. Bergeron, of Farmerville, for appellant.

Scarborough & Barham, of Ruston, for appellee.

TALIAFERRO, Judge.

The issues of this case require for determination an interpretation of some of the provisions of Act No. 58 of 1936, commonly referred to as the Teacher Tenure Act, in the light of the facts of the case. Pertinent parts of the Act are here quoted:

"Section 48. The word 'teacher' as used in this section shall be construed to mean any employee of any parish school board who holds a teacher's certificate, and whose legal employment requires such teacher's certificate.

"Each teacher shall serve a probationary term of three years, such probationary term to be reckoned from the date of his first appointment in that parish in which the teacher is serving his probation. During said probationary term the parish school board may dismiss or discharge any probationary teacher upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish.

"Any teacher found unsatisfactory by the parish school board at the expiration of the said probationary term, shall be by said board notified in writing that he has been discharged or dismissed; provided that in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of that parish in which he has successfully served said three year probationary period; and provided further, that all teachers presently in the employ of any parish school board, who hold proper certificates, and who have served satisfactorily as teachers in that parish for more than three consecutive years, shall be and are hereby declared to be, regular and permanent teachers in the employ of the school board of that parish.

"No permanent teacher shall be removed from office except upon written and signed charges of wilful neglect of duty, or of incompetency, or dishonesty, and then only if found guilty after a hearing by the school board of that parish in which the teacher is employed; * * *."

Plaintiff holds, and has held for several years, a professional elementary certificate from the State Department of Education which entitles her to teach in the elementary grades of the approved high schools of the state. As a grade teacher, she taught in the public school at Holmesville in Union Parish during the sessions of 1932–1933, 1934–1935, 1935–1936 and 1936–1937. She desired to continue teaching in that parish and demanded of its superintendent a renewal of her contract for the scholastic year of 1937–1938. Her demand was refused, in which action the School Board of the Parish concurred. On November 2, 1937, the present suit was filed.

After averring the above recited facts, plaintiff further alleges that she has not been discharged from the employment of teacher of said Parish; that she has served a probationary term of three years for said school board and is therefore a permanent teacher and employee of said Board. She prays for judgment in keeping with the epitomed allegations and for further judgment for the amount of salary she had theretofore received as teacher, and that all the benefits and privileges to which she is entitled under Section 48 of Act No. 100 of 1922, as amended by Act No. 58 of 1936, be recognized and enforced.

The allegations of the petition are generally denied. Defendant specially denies that plaintiff was given or had a legal contract to teach in Union Parish for the year 1937–1938 nor for either of the other years she taught therein, and therefore denies that she is entitled to the benefits and privileges created by said Teacher Tenure Act.

In the alternative, defendant pleads that on May 22, 1937, plaintiff was notified in writing by defendant, through its then secretary, P. L. Read, "that she had been discharged and dismissed and that her services would not be required any further." Further, in the alternative, it is averred that, "Plaintiff by her actions in not filing a complaint with your respondent with reference to the action taken by your respondent in not keeping her on the teaching list of Union Parish and by her not having made any demand upon your respondent to reinstate her as a teacher or to grant her a hearing, lulled your respondent into the belief that she had acquiesced in the action taken by your respondent and,

acting under said belief, your respondent did employ a successor to plaintiff, and that by and because of the laches of the plaintiff, she is estopped and barred from now seeking to obtain recognition as a permanent teacher to the prejudice of your respondent and the party presently employed to succeed plaintiff."

Other issues were raised by the answer but have been abandoned.

Defendant appealed from a judgment in plaintiff's favor, responsive to her prayer.

The contention that plaintiff never held a legal contract to teach in Union Parish is based upon record facts which do not disclose that the School Board of the Parish by positive action, in session assembled, authorized its president and superintendent to enter into and execute with her a contract to teach, as the law requires. It appears that at its July, 1936, session, as had been done for several years prior, the School Board adopted a blanket resolution which authorized its president and secretary to "transact all legal and necessary business as may occur from time to time in the run of the year's business", including such items as borrowing money, the payment of notes, both the parish and district, the payment of bonds and coupons, and in fact "all matters as may come before them during the school year 1936–1937." There is no specific reference in the resolution to the selection or nomination of teachers for the ensuing year. However, presuming · adequate authority thereunder, Mr. Read, the superintendent and secretary of the Board, did, on September 1, 1936, after the Teacher Tenure law went into effect, enter into a written contract with Mrs. Andrews, plaintiff, whereby she was employed to teach during the 1936–1937 session of nine months at the stipulated salary of $80.75 per month, and she did teach in the Holmesville school all of said term and was paid therefor, as provided in the written contract. This course seems to have been then generally followed in the selection of teachers of that Parish. The requirements of Section 20 of Act No. 100 of 1922, as lastly amended by Act No. 59 of the Legislature of 1936, were not observed. Teachers conditionally selected by the superintendent were not employed by the Board from nominations submitted by him, as said law provides, nor did the Board, on its own motion, initiate the election of any teachers, as is permitted by law. Because of this non-ob-

servance of the law and the attempt on the part of the Board by the above referred to resolution of July 7, 1936, to delegate to its president and superintendent authority which it alone was competent to exercise, appellee strenuously contends and argues that plaintiff was never legally employed to teach in Union Parish and therefore is not eligible for the benefits of the Teacher Tenure Act. If this contention is tenable, then none of the teachers of that Parish, when said act became effective, were eligible for its benefits and privileges.

The existence of the contract, irregular as it was, was definitely recognized by the School Board by allowing plaintiff to teach thereunder without protest or objection, and by paying her the stipulated salary from public funds. A contractual relation between it and her was definitely recognized to exist when, on May 22, 1937, the then superintendent, pursuant to the instructions of the Board, addressed to all the teachers of the Parish, including plaintiff, the letter now urged as the basis of the contention that plaintiff was formally dismissed as teacher. We here quote this letter in full to serve the purposes of the present discussion, and also that which shall hereafter follow:

"Dear Teacher:

"According to the rulings of State Superintendent T. H. Harris and the Attorney General, teachers whose employment was authorized prior to noon on July 28, 1936, are not under the tenure law.

"At a special session of the Union Parish School Board, held on May 21, 1937, I was instructed to advise you that your services in the employment of this Board will terminate at the end of your present contract. This does not necessarily mean that you will not be reemployed, but will clarify in your mind any misinterpretation of your status as a teacher in the Parish.

"Yours very truly,

"Union Parish School Board,

"By P. L. Read, Parish Superintendent."

The contract with plaintiff was for a lawful purpose. It involved nothing contrary to public morals or public policy. It was, therefore, subject to ratification. It was completely ratified by the voluntary execution of its provisions by the contractants. The right to cause its rescission by the Board was unquestionably renounced (tacitly, at least) by such execution. Anent

these principles, Article 2272 of the Revised Civil Code has this to say:

"In default of an act of confirmation or ratification, it is sufficient that the obligation be voluntarily executed, subsequently to the period at which the obligation could have been validly confirmed or ratified.

"The confirmation, ratification, or voluntary execution in due form, and at the period fixed by law, involves a renunciation of the means and exceptions that might be opposed to the act, without prejudice, however, to the right of persons not parties to it." Bonneau v. Poydras, 2 Rob. 1; Cobb v. Parham, et al., 4 La.Ann. 148; International Accountants Society v. Santana, 166 La. 671, 117 So. 768, 59 A.L.R. 276.

The action of the School Board in recognizing and ratifying its superintendent's contract with plaintiff, in the respects above mentioned, infused into it legal vitality, and thereafter, for all legal intents and purposes, it ceased to be vulnerable to its incipient defects and took on the mantle of perfected regularity. Its ratified character produced effects equivalent to those which would have inevitably flowed from a contract originally imbued with legal vitality because confected strictly pursuant to the commands of law.

■ We find no merit whatsoever in the contention that plaintiff was discharged as a teacher by the defendant Board. The above quoted letter and the Board's action in instructing its secretary and superintendent to write and forward same are alone relied upon to sustain this position. Regardless of the motives which prompted this action, it is certain it was not intended as a discharge and dismissal of the entire teaching force of the Parish. It could not possibly have such effect. No charges were therein preferred against plaintiff or any other teacher. On the contrary, encouragement was held out to them that all might be re-employed. We understand that with but few exceptions the entire teaching corps of the Parish was retained for the session of 1937–1938. No reason whatever, weak or strong, is assigned for not continuing plaintiff's services.

■ At the inception of the trial, plaintiff specifically abandoned the position originally taken by her that she was a permanent teacher, within the intendment of the 1936 Act at the date it became effective. Her position now is that at the time the act went into effect she, having

taught but two consecutive years in the Parish, her status was that of a probationary teacher and that this character continued until she completed teaching during the following session of 1937–1938; that at the expiration of this session, no charges having been preferred against her in the manner provided by the act, she automatically became a "regular and permanent" teacher under the express provisions of said act. The lower court specifically upheld this position. It is not seriously challenged here. We think the ruling correct.

■ The Teacher Tenure Act was designed to accomplish a laudable purpose. If sanely and impartially administered, the beneficent results to inevitably follow will vindicate the persistent efforts of its champions in procuring its adoption. It was intended, inter alia, to protect the worthy instructors of the youth of a parish from enforced yielding to the political preferences of those theretofore having the power to grant or withhold employment to them; and to vouchsafe to such teachers employment, after a long term of satisfactory service to the public, regardless of the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs. It was necessary from the very nature of such a far-reaching piece of legislation that some term be provided in which the efficiency and true worth of a teacher might be correctly appraised. The Act fixed this term at three years. It is contended that this provision operates prospectively only. Such an intention does not clearly appear. The Act does say that within that period a teacher may be discharged by pursuing its requirements, but we think this was intended to apply to those teachers who were not teaching in the particular parish at the effective date of the Act, but afterwards employed. The Act also says that the beginning of the probationary term is to be "reckoned from the date of his [the teacher's] first appointment." This language certainly is susceptible of being given retroactive effect. We are of the opinion that as regards the present case, the words "first appointment" refer to the first contract of the consecutive term taught by plaintiff. There is no sound reason, so far as we are able to discern, why plaintiff should have to teach three years after the passage of said Act, in order for a Board to determine whether she is capable

and worthy as a teacher. The two years she had taught for it, immediately before the adoption of the Act, plus one year thereafter, was ample time in which to pass on her qualifications as a teacher. This Act, having for its object the purposes aforementioned, should be liberally construed in favor of that class of persons designed to be its primary beneficiaries.

■ Adverting to the asserted dismissal of plaintiff, it is apropos of the issue to say here that, having completed the probationary service term of three years and no charges having been preferred against her by the superintendent during such term, she could not thereafter be dismissed at the whim of anyone. To effect such a dismissal in these circumstances, written and signed charges of "wilful neglect of duty or of incompetency or of dishonesty" must have been made and sustained by proof after due and regular hearing. Even during the probationary term a teacher may not be dismissed save "upon the written recommendation, accompanied by valid reasons therefor, of the superintendent", etc. No such action was taken by the superintendent in plaintiff's case.

The Teacher Tenure Act, for its own purposes, defines a "teacher" to be an "employee of any parish school board who holds a teacher's certificate, and whose legal employment requires such teacher's certificate". Within the meaning and intendment of this law, plaintiff was a "teacher" in the public schools of Union Parish when Act No. 58 of 1936 became effective, and that status has undergone no change.

■ We do not think the plea of laches well founded. Defendant elected a new superintendent on July 1, 1937, displacing Read. Plaintiff applied for re-employment to the newly elected superintendent several times before the schools of the Parish opened in September, 1937. In each instance she was refused. She made no formal demand on the Board for re-employment during this period, save a letter by her counsel demanding employment for her. The Board's present attitude toward her clearly shows that further application to it would have been vain and futile. Anyway, the superintendent is the proper person to whom to apply for a position to teach. It does not appear that the School Board convened between July 1, 1937, to the time the schools reopened. This suit was filed, as said before, on November 2, 1937, less than two months after the schools did open for a year's session. No action could have been taken by plaintiff in the interim that could have brought the issue to a final close before the schools were opened in September. At that time her place had been filled by the employment of another teacher. To that time she entertained hopes that her contract would be renewed.

Defendant cites and relies upon the cases of State ex rel. Mrs. Anna Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830 and State ex rel. Mrs. Evelyn M. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834, decided by the Supreme Court March 7, 1938, to sustain its plea of laches. In each of these cases the relator delayed over a year to enforce her alleged rights as a teacher. State ex rel. Skelly v. Board of Port Commissioners, 159 La. 465, 105 So. 510, is also relied upon. There the relator allowed over two years to pass before seeking reinstatement judicially to the position from which he had been discharged. The court held the delay unreasonable. The same was held in State ex rel. McCabe v. Police Board of City of New Orleans, 107 La. 162, 31 So. 662, wherein nearly a year elapsed before the court was resorted to for redress of alleged grievances.

Over six months have elapsed since this suit was filed. It is not improbable that several months additional, at least two, will have passed before judgment therein will have become definitive. Had plaintiff instituted suit when first apprised that her services would no longer be availed of, it is unlikely that even to the present date a final decree would have been entered therein. Defendant does not intimate that had she filed suit earlier, her pleas would have been more favorably received and acted upon than has been done in the case at bar. We think she acted without unreasonable delay in bringing suit. Surely defendant has suffered no injury or loss as a result of the suit not being filed earlier.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.