The question before us is well stated in the opening paragraph of the brief of counsel for plaintiff-appellant:
"The issue presented by this appeal is whether a minor who has purchased and received clothing and accessories may, without returning them, even after her emancipation by marriage several months later, escape liability for payment of their price on the ground of her general contractual incapacity at the time the purchases were made."
D. H. Holmes Co., Ltd., is a Louisiana corporation which operates a large department store in New Orleans. Mrs. Bettie J. Rena, now the wife of Charles Salles, during the months of October and November, 1944, bought, on open account, from the plaintiff corporation merchandise priced at $999.34, consisting of $451.79 for dresses, $355.96 for accessories (such as neckwear, underclothing, cosmetics, gloves, etc.), $44.90 for jewelry, $8.61 for lunches and candy, $68.20 for items such as stationery, and $59.88 for men's clothing. She was only seventeen years of age at the time and had not been emancipated. She was married about eight months later and thus became emancipated by marriage. Her father is living, but we gather from the record that while he lives out of the City of New Orleans, she came to the city to earn her living and now lives here.
When the defendant failed to pay for the merchandise which she had purchased, plaintiff corporation filed this suit alleging that the defendant is "a person of the full age of majority * * *."
Based on the fact that, at the time the purchases were made, she was a minor and had not been emancipated, and that even when the suit was filed, although it was alleged that she was "a person of the full age of majority," she had not actually arrived at the age of majority, being only emancipated as the result of her marriage, defendant filed an exception of no right of action. In the District Court this exception was referred to the merits, and defendant then filed answer in which she admitted having made the purchases and in which she also denied liability, specially pleading "her minority and legal incapacity." In her answer she also averred that the purchases were made "in defendant's maiden name" and when she was "an unmarried, unemancipated minor."
After a trial on the merits, there was judgment in favor of defendant. D. H. Holmes Co., Inc., has appealed.
A determination of the legal issues which are presented requires an understanding of certain facts which were shown by the evidence, so that we have concluded that it is best to do as the District Judge did, refer the exception of no right of action to the merits, and take into consideration all of the facts which were shown by the evidence. Most of those facts we have already stated.
Plaintiff corporation asserts that for three reasons the defendant, although a minor seventeen years of age at the time the purchases were made, may now be held liable. We quote those reasons from the brief filed on behalf of plaintiff-appellant:
"1. Appellee' is liable for the price of her purchases because they were 'necessaries'.
"2. In the event that this court should hold that the contract between appellant and appellee was not an enforceable one for necessaries, appellee has ratified it by her failure, subsequent to her emancipation by marriage some eight months later, to return the articles purchased by her during her minority.
"3. Under the provisions of Article 1793 of the Civil Code, appellee is obliged to restore the articles purchased by her, and in default of doing so, is liable for their value."
Defendant relies principally on Article 1866 of our Civil Code, which reads as follows:
"Lesion needs not be alleged to invalidate such contracts as are made by minors, either without the intervention of their tutors, or with such intervention, but unattended by the forms prescribed by law. Such contracts, being void by law, may be declared so, either in a suit for nullity or on exception, without any other proof than *Page 815 
that of the minority of the party and the want of formality in the act."
In answer to each of the three contentions made on behalf of plaintiff, defendant has this to say: As to the first contention that the articles purchased were necessaries and that, therefore, the minor may be held liable for the purchase price, defendant says that the very article of the Code on which plaintiff relies — Article 1785 — expressly requires that in order that such a contract for necessaries be held valid, it must be shown by the furnishers of the "necessaries" that the tutor (father) failed to furnish them, and not only that they were articles needed, such as clothing, but also that taking into consideration the social and financial status of the minor, those particular articles could be considered as necessary for that particular minor.
Counsel say that there is no proof whatever in the record on these questions, and counsel also insist that even if it had been shown that the articles were necessaries and were not furnished by the father, still there would be no liability under Article 1785 for the reason that that article does not make the minor liable, but places the legal liability upon the person who should have furnished the necessaries, but failed to do so.
The second contention of plaintiff — that by retaining the articles after her emancipation by marriage, defendant ratified the purchases and thus made herself liable, although the contract may not otherwise have been binding upon her — is based on the last paragraph of Article 1785, which reads as follows:
"In all other cases, the minor is incapacitated from contracting, but his contracts may be rendered valid by ratification, either expressed or implied, in the manner and on the terms stated in this title under the head: Of Nullity or Rescission of Agreements."
In answer to this contention, counsel for defendant say that even if ratification may result from the retention of such perishable items as wearing apparel, accessories, etc., there is no proof in the record to show that any of the said articles remained in the possession of the defendant eight months after their purchase when she was emancipated by marriage, and that, therefore, it has not been shown that it was within the power of the defendant to return the articles. And counsel say that it requires more than the mere passive retention of such perishable movables to show ratification; that there must be some affirmative act indicating a desire to retain the benefits of the purchases, or there must be the retention of nonperishables, such as lands or buildings.
The third contention of plaintiff is that under Articles 1793 and 2229 of our Civil Code, even if the defendant is permitted to avoid liability on the ground that she was a minor at the time the purchases were made, she must first return the articles.
Article 1793 reads as follows:
"If, in a contract with an incapacitated person, or in a contract void for want of form, entered into with any one for the benefit of such incapacitated person, any consideration be paid or given, and the contract be afterwards invalidated on account of such incapacity or want of form, the consideration so paid or given must be restored, if it was applied to the necessary use or benefit of the incapacitated person."
Article 2229 reads as follows:
"When minors, persons under interdiction, or married women are admitted, in these qualities, to the benefit of restitution against their engagements, the reimbursement of what may have been paid, in consequence of those engagements, during minority, interdiction, or marriage, can not be required of them, unless it be proved that what was paid accrued to their benefit."
This contention is very similar to the second — that the purchases have been ratified by retention of the articles, and in answer to it counsel for defendant say, first, that there is no proof that the articles are still in existence and in the possession of defendant and, therefore, no proof that they can be "restored", and second, that there is no proof that the articles purchased were "applied to the necessary use or benefit of the incapacitated person."
There is between counsel an irreconcilable difference on the question of the effect of Article 1866 under which counsel for *Page 816 
defendant say that all that is necessary to avoid liability is that the defendant show that, at the time of making the purchases, she was a minor and made the purchases "unattended by the forms prescribed by law." Counsel say that when those facts appear, there can be shown no other facts which will place liability for the purchase price on the defendant. Counsel for plaintiff insist that this is not so, and that it is not all such contracts of minors that are null, but only those which do not result in benefit to the minor. They rely on the early decisions of our Supreme Court in Southworth v. Bowie, 1 Mart., N.S., 537, decided in 1823, in which the Court said:
"Our conclusion, therefore, is that a minor is not incapable to contract, but that he is rendered incapable to injure himself by contracting, and if in the instance before us, the jury had found that the engagement the defendant entered into, had been useful and advantageous to him, we should have felt it our duty to enforce it."
This decision, rendered prior to the year 1825, was based on the Code of 1808. It is argued that the change brought about by Article 1860, which remains in our present Civil Code as Article 1866 almost as it was in the Code of 1825, alters this rule, even assuming that the Southworth case correctly interpreted the article of the Code of 1808 and that, as a result of the change, where a minor contracts without the authority of a tutor or patent, or where the authority is "unattended by the forms prescribed by law," the contract is null, and that even where all the forms of law have been complied with, the contract may be annulled on the showing of simple lesion. Arts. 1866, 1867.
Since the present article (1866) is essentially the same in this regard as the Code of 1825, it is argued that the rule now is, or should be, that, in such a case as this, the mere showing of minority without proof of authority is sufficient to establish the nullity of such a contract.
This view is expressed in an article entitled, "The Contractual Capacity of the Minor in Louisiana," 20 Tulane Law Review, page 574. The author of the article recognizes the fact that in spite of the codal change in 1825, there have been, since that time, many later cases which, "by misinterpreting the Southworth case, * * * have evolved in dieta a rule of partial capacity which states that the minor will be bound for his contracts when they prove advantageous or beneficial to him."
The author cites the following cases: Guirot v. Guirot's Syndics, 3 Mart., N.S., 400; Ducrest's Heirs v. Bijeau's Estate, 8 Mart., N.S., 192; Succession of Johnson, 4 La. Ann. 253; James Co. v. Alford Co., 15 La. Ann. 506; Commercial Credit Co. v. Pool, 2 La. App. 525.
[1] Our own view on the matter is that there is no possibility of following both the express provisions of Article 1866 and the statement in Southworth v. Bowie. We cannot see how it is possible to hold, on the one hand, that because of Article 1866 the contract for these purchases, made by a minor without the intervention of a tutor and unattended by the forms prescribed by law, is invalid and that in order to set it aside, lesion need not be alleged, and, on the other hand, to hold that if the purchases were advantageous and inured to the benefit of the minor, there may be liability for the purchase price. We conclude on this point that the "contract", under which the purchases were made, was a nullity when made. It had no effect and the minor did not become liable for the purchase price.
[2-4] If the contract was a nullity, then the provisions of Articles 1793 and 2229 of the Civil Code concerning restitution of what was received, must be interpreted not as setting forth conditions precedent which must be complied with before such a contract may be declared a nullity, but must be held to provide for certain resulting rights granted to the other party to such a contract which has been declared null. In other words, neither of these articles provides that the restitution must be made before the contract may be declared null. Both seem to imply, if not to expressly state, that the contract may be treated as a nullity regardless of the restitution of the consideration given, but that after the contract has been declared null, then the other party — under certain conditions — may demand, not the purchase price originally agreed upon, but the restitution of the articles. And even this restitution may not *Page 817 
be demanded unless the articles are shown to be still in existence and in the possession of the purchaser, and even then, because of the provisions of Article 2229, restitution may not be demanded "unless it be proved that what was paid accrued to their benefit," that is to say, that what was received by the minor proved to be beneficial. And in passing, let us say that it is obvious that here again the burden of proof is on the vendor.
In Riva's Heirs v. Bernard, 13 La. 159, as expressed in the second syllabus, the Supreme Court held that:
"Where the ratification of a sale, or of certain proceedings, is relied on, the burden of proof is on the party alleging it, and facts must be established from which the ratification necessarily results, when there is no positive proof."
In International Accountants Society v. Santana, 166 La. 671,117 So. 768, 770, 59 A.L.R. 276, where it was contended that a contract, which had been made by a minor, had been ratified after reaching the age of majority, the Supreme Court said:
"The burden of proving the ratification or voluntary execution of the contract is on the plaintiff."
And in 45 Corpus Juris Secundum, Infants, § 117, it is stated that:
"* * * the party who asserts that a contract is binding has the burden of proving matters in avoidance of the infancy asserted, * * *."
"A person seeking to recover for necessaries furnished an infant has the burden of proving that the things furnished were necessaries suitable to the infant's station and circumstances; * * *."
We next consider the suggestion that even if the contract was null when it was entered into, it was ratified by the retention of the articles purchased after the minor was emancipated by marriage. It is true that Article 1785 does provide that such contract of the minor, though invalid when made, may be rendered valid by ratification either express or implied, and it is also true that in our jurisprudence there are cases in which ratification has been held to have taken place. Counsel for plaintiff cite Taylor v. Rundell, 2 La. Ann. 367 and Succession of Sallier, 115 La. 97, 38 So, 929, 930.
In the former of these two cases the defendant, while a minor, executed notes which were sued on. The defense was minority at the time the notes were executed. It was contended that even if the maker was a minor when the notes were executed, ratification had resulted from the retention, after arriving at full age of majority, of the property for which the notes were given. The Court had some doubt on the question of whether the defendant was a minor when the notes were given, but held that assuming that the defendant was a minor, the contract had been rendered valid by ratification. But the evidence showed that 'the notes had been given for improvements on land, or possibly for the land itself, and that from these' improvements or from the land the maker of the notes had continued "to derive annual revenues." In other words, after arrival at majority there was a continued receipt of benefits from the contract and a continued retention of improvements to realty, if not of the realty itself.
In Succession of Sallier, as stated by counsel for D.H. Holmes in their brief, "certain heirs sought to annul succession proceedings, and asked for a partition. The court found that, after coming of age, the plaintiffs had receipted for sums received for them by their tutor, and that no offer to return them had been made." After the minors reached their respective majorities, they brought suit to annul the succession proceedings. The Supreme Court held that they had ratified the proceedings because, during more than ten years after the youngest of them had become of age, they had "receipted to their mother for all sums she had received for them * * *," and that these sums for which they had receipted after attaining majority had been turned over to them as a result of those same succession proceedings.
In each of those cases there was an affirmative act after attaining majority which could be construed only as an intentional ratification.
[5] And it is obvious that such an intentional affirmative act is necessary. If *Page 818 
the original contract is a nullity, then the new one which results from ratification can come into existence only if the parties actually intend to bring it about by acquiescing affirmatively in what has been done.
The word "ratify," according to Webster's New International Dictionary, means: "To approve; to sanction". According to Black's Law Dictionary, Deluxe Edition, it means: "To approve and sanction." In one of the cases cited in Black's Law Dictionary there is language illustrating the view which we have that the ratification does not result unless it is made with an intention and with knowledge of the facts. First Nat. Bank of Enid, Okla., v. Alton Mercantile Co., 8 Cir.,18 F.2d 213, 215. There the Court said that in order that ratification result the act relied on must have been done "with knowledge of all material facts".
In International Accountants Society v. Santana, supra, the Supreme Court held that there had been no ratification even though the defendant, after attaining majority, had made certain payments on account of the contract which he had entered into during minority.
In reaching that conclusion the Supreme Court approved the decision rendered by this Court in the same case, reported in 7 La. App. 594, in which we cited many cases, from one of which, Hamilton v. Hodges, 30 La. Ann. 1290, we quoted the following statement, which is typical of what was said in all of them:
"The ratification of a contract can only be adduced from facts, when those facts evince clearly and absolutely the intention to ratify.
"The validity of any ratification — express or tacit — can legally rest but upon a previous and full knowledge of the contents of the unauthorized or defective acts to which the ratification is to impart a posthumus and retroactive validity."
In Kothe v. Von Behren, La. App., 5 So.2d 571, 573, we again discussed the question of ratification and again held that it was not shown that the acts performed after attaining majority had indicated an intention of ratifying the contract which was originally invalid. Following this finding, we said:
"On the whole, we are of the opinion that the evidence is insufficient to prove ratification. If it be sufficient to create a doubt, then the party against whom the ratification is claimed must have the benefit of the doubt."
[6] We think that the same result must be reached on the third contention of plaintiff based on Articles 1793 and 2229, since those articles obviously do not prevent the declaration that the contract is a nullity but merely require that after the contract has been declared a nullity, the minor can be called upon to restore the benefits which were received, provided it be proved, under the first of these articles, that the consideration "was applied to the necessary use or benefit of the incapacitated person," and provided also, under the second of the articles, that "it be proved that what was paid accrued to their benefit."
Our conclusion is that the contract was null and produced no liability in the minor to pay the purchase price and that there is no proof of facts sufficient to show ratification.
[7] We conclude also that if the plaintiff has any rights against the minor resulting from the transaction, there is not included the right to claim the purchase price. That is all that is claimed in this suit.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 819