JANVIER, Judge.
The plaintiff, Joseph P. Butto, while an unemancipated minor, purchased from Carroll O. Heimiller, one of the defendants, a Chevrolet automobile for $2,131.75, paying $500 cash and executing a chattel mortgage and note for $1,631.75. The note *45 provided for payment in twenty-three monthly installments, each in the sum of $62.25. The note was transferred by endorsement to the other defendant, Central Finance Company.
On October 12, 1951, Butto attained his majority. In the meantime he had taken the car to Philadelphia, Pennsylvania, where he left it in the custody of his father, since he himself was in service in the United States Coast Guard. In the early part of December, 1951, Butto returned to Philadelphia from Coast Guard Service in the United States. In the latter part of January, 1952, the Central Finance Company repossessed the car, there being an unpaid balance amounting to a little more than $400.
No complaint is made that the repossession of the car was done illegally or otherwise than in strict accordance with law.
On January 9, 1953, Butto brought this suit against Heimiller and Central Finance Company, praying for solidary judgment against them in the sum of $1,700, representing $1,600 which he paid on the purchase price of the car and $100 as the value of certain personal articles which he says were in the car when it was repossessed. In the alternative, he prayed for judgment for $1000, alleging that amount to represent the difference between the actual value of the car at the time at which it was repossessed and the balance which, at that time, was due on the mortgage note.
He alleges that he was a minor at the time of the purchase of the car and the execution of the chattel mortgage and note; that both the sale and the mortgage were unenforceable and voidable because of his minority, and he prays that the sale be rescinded and the mortgage and the note can-celled.
The defendants admitted the sale of the car and the execution of the mortgage and note. They averred that Butto, at the time of the purchase, declared that he was twenty-two years of age and that, after he reached the age of majority, he ratified the contract, and they further alleged that the contract under which the plaintiff purchased the car “was beneficial to plaintiff,” and consequently the sale could not be rescinded.
There was judgment rescinding the sale of the automobile and in favor of plaintiff and against Heimiller for the sum of $500, and in favor of plaintiff and against Central Finance Company in the sum of $1,100. From this judgment both defendants have appealed.
It is conceded by defendant’s that, at the time of the execution of the contract of purchase and of the mortgage and the note, the entire transaction was invalid and that, on reaching his majority, had the plaintiff not ratified the contract he could have had the entire transaction rescinded except for the alleged fact that the automobile was of benefit to him. However, defendants declare that, for any one of three reasons, the claim of plaintiff must now be dismissed.
They maintain that the car which was bought by the minor was “an object of utility” and that therefore, because of the provisions of Article 2147 of our LSA-Civil Code, the payment which was made cannot be reclaimed and the mortgage and the note which were executed were enforceable. That article reads as follows:
“Payment made to the creditor is not valid, if he is one of those whom the law has placed under an incapacity to receive it, unless the debtor prove that the payment was applied to some object of utility for the creditor; it is not sufficient if it was applied merely to contribute to his pleasure.”
The next contention made by defendants is that although a contract with a minor is unenforceable, nevertheless if it has been executed there arises a natural obligation not to claim back what has been paid on account of it. Defendants cite Article 1757, paragraph 2, of our LSA-Civil Code, which reads as follows:
“A natural obligation is one which can not be enforced by action, but which is binding on the party who *46 makes it, in conscience and according to natural justice.”
Defendants then direct attention to LSA-Civil Code Article 1758, paragraph 2, which declares that among natural obligations are:
“Such as are made by persons having the discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.”
And they also point to Article 2303 which requires that where one who, believing himself to be a debtor, pays and later claims back that which he has paid, “it is necessary that the thing paid be not due in any manner, either civilly or naturally.” This article further declares that: “A natural obligation to pay will be sufficient to prevent the recovery.”
Defendants say that plaintiff was nineteen years of age; that he had been in the Navy for a period of some three years, and that he possessed the necessary discretion to enable him to contract.
The third contention of defendants is that, after plaintiff attained majority, he, by his failure to indicate his intention to rescind the contract and by his making use of the car and particularly by his action in attempting to sell it, ratified the contract and thus deprived himself of the right to have the sale declared null.
Since we think that these actions of plaintiff must be construed as evidencing ratification, we find it unnecessary to consider the other contentions made by defendants.
Plaintiff, on attaining majority on October 12, 1951, did nothing to indicate an intention to rescind the contract and, in fact, by his use of the car and by his attempt to sell it, evidenced an intention to ratify it. We cannot believe that, at that time, he had the slightest intention of rescinding the contract, and we are convinced that, had the defendant finance company not taken proceedings to repossess the car, it would still be in plaintiff’s possession and would be in use by him.
It is true that he was away in the service until the early part of December, 1951, and possibly he could have done nothing until he returned to Philadelphia, which he says was in the early part of December, 1951. Yet, almost two months after his return to his home in Philadelphia, he had done nothing to indicate his intention to rescind the contract and, in spite of his denials, we think it obvious that he was using the car. He did nothing until the car was seized, and even at that time he made several efforts to sell the car to used car dealers after first attempting to dispose of it to his brother. He said that he first attempted to contact his brother as he wanted to give him the preference, and then tried to sell it to the dealers to whom we have referred.
The question of what constitutes ratification of such a contract is a very interesting one.
In Kothe v. Von Behren, La.App., 5 So.2d 571, we considered such a defense of ratification and reached the conclusion that there had been no ratification of the contract entered into during minority. We relied largely on what the Supreme Court said in International Accountants Society v. Santana, 166 La. 671, 117 So. 768, 770, 59 A.L.R. 276. We note particularly the following reference made by the Supreme Court to the decision of this Court:
“The Court of Appeal, applying the well-settled rule of law that the ratification of a contract made during minority must be with the full knowledge of the disability and with the clear intention to abandon all legal right to question its validity upon that ground, held that the payments made by defendant after reaching his majority were not of themselves sufficient to constitute ratification.”
The same test was applied in D. H. Holmes Co. v. Rena, La.App., 34 So.2d 813, and in Hamilton v. Hodges, 30 La.Ann. 1290.
*47 From these authorities we conclude that, where a contract is executed, that is, where something remains to be done, mere inaction on the part of the contracting party who was a minor and who has reached majority, cannot be construed as ratification. This is, of course, perfectly sound reasoning. Where the minor, under the contarct, has agreed to make certain payments and, after attaining majority, fails to make the payments, his failure obviously cannot he looked upon as evidencing an intention to ratify. On the contrary, his failure evidences a determination that he shall not be bound by the contract. It is in itself evidence of intention not to ratify.
But a different situation is presented where the contract has been completely executed and the minor, who has come of age, desires to rescind. Surely, in such situation, there must be some affirmative action on his part.
The distinction between the two situations is recognized in International Accountants Society v. Santana, supra. There our Supreme Court quoted with approval the following statement from 2 Greenleaf’s Ev., § 367, as follows:
“ ‘There is, however, a distinction between those acts and words which are necessary to ratify an executory contract, and those which are sufficient to ratify an executed contract. In the latter case any act amounting to an explicit acknowledgment of liability will operate as a ratification; as in the case of a purchase of lands or goods if after becoming of age he continues to hold the property and treat it as his own. But in order to ratify an executory agreement made during infancy, there must be not only an acknowledgment of liability, but an express confirmation or new promise voluntarily and deliberately made by the infant upon his coming of age and with knowledge that he is liable therefor. An explicit acknowledgment whether in terms or by partial payment is not alone sufficient, for he may refuse to pay a debt which he admits to be due.’
In that decision there also appears the following:
“In Robbins v. Eaton, 10 N.H. 561, we find an interesting discussion of the subject. The court says:
‘Payment of part of a note is no ratification of the whole, because the infant may admit only an indebtedness to that extent. The ratification should be equivalent to a new contract. Therefore an express promise as to the whole debt is necessary. * * * There are numerous authorities to this effect; but these are cases where notes were given for articles which had been used or consumed prior to the infant’s becoming of age. Where the matter constituting the consideration of the note is not in existence when the infant becomes of age, or is wholly beyond his control, there is nothing upon which an implied promise can arise, and an express promise to pay the debt can álone render the infant liable. The authorities are, therefore, correct, as limited to this class of cases. But where the consideration of the note is still in existence, in as perfect a state after the infant becomes of age as before, and is subject to his control, he may so deal with the articles or property forming such consideration, as to raise an implied promise of payment.’ ”
We can well understand that where, as the result of a contract made while a minor labors under incapacity, money is paid to the minor as a consideration for the making of the contract and that money is spent by the minor and later the minor desires to rescind and repudiate the contract, the money need not be tendered back, but that is because that particular money is no longer in the possession of the minor. It has been spent, it has been dissipated, and to require the minor to refund it would be to require him to carry out, after majority, a contract unenforce *48 able when made. But we can see no reason why a person who, as a result of a contract made while a minor, has received tangible physical property and later desires to rescind the contract and has in his possession the same tangible physical property in its same form, should be permitted to rescind the contract and demand back the money which he has paid and yet keep the property which he received.
But whether it was necessary or not that the minor tender the automobile, or at least make it available to the defendants, surely his retention and use of the car for nearly two months and then his attempt to sell it cannot be looked upon otherwise than as an express ratification of the contract under which he purchased it. We have not overlooked the well established rule recognized in International Accountants Society v. Santana, supra, also in D. H. Holmes Co. v. Rena, supra, Hamilton v. Hodges, supra, and Kothe v. Von Behren, supra. There we were considering an executory, not an executed contract, and we held that there was no ratification since the minor, on attaining majority, did nothing which indicated intention to ratify. But we think that here this intention was evidenced by the attempt to dispose of the car, first, to his brother, and then to other used car dealers.
These actions of the minor must be interpreted as intention to ratify the contract. Certainly he had no right to claim back the amount which he had paid on it
However, the record shows that, when the car was repossessed and sold, the price which Central Finance Company received was greater than the balance which was due on the mortgage note. There were certain expenses connected with the repossession and sale of the car, but we cannot tell from the record exactly what was the balance which was due, nor the amount of those expenses. Such amount as remains in the hands of Central Finance Company is obviously due to the plaintiff, and the record shows that a tender was made to him but that he refused to accept the amount tendered. In order that it may be determined exactly what this amount is, we think it necessary that the matter be remanded to the Civil District Court for the Parish of Orleans for this purpose only.
Accordingly, the judgment insofar as it runs against Jacob Heimiller is annulled, avoided and reversed and plaintiff’s suit is dismissed as against him at plaintiff’s cost. Insofar as the judgment runs against Central Finance Company, the judgment appealed from is annulled, avoided and reversed and the matter is remanded to the Civil District Court for the Parish of Orleans in order that additional evidence may be introduced and that the Court may determine the amount due to the plaintiff from the Central Finance Company. Costs of this appeal and other costs are to await the final determination of the matter.
Reversed and remanded.