153 So.2d 905 (1963)
ELLIS ELECTRIC COMPANY, Inc.
v.
ALLSTATE INSURANCE COMPANY et al.
No. 5879.
Court of Appeal of Louisiana, First Circuit.
June 3, 1963.
*906 McCollister, Belcher, McCleary & Fazio, by M. Aubrey McCleary, Jr., Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by Robert J. Vandaworker, Baton Rouge, Erlo J. Durbin, Denham Springs, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY, and REID, JJ.
REID, Judge.
The plaintiff, Ellis Electric Company, Inc., filed this suit to recover property damage to its truck as a result of a vehicular accident which occurred August 14, 1961 *907 at the intersection of Wax Road and Juban Road in Livingston Parish, Louisiana. The defendants are Thomas Wayne Sullivan, the minor son of Thomas Edison Sullivan, and driver of the vehicle which ran into plaintiff's truck, his father, Thomas Edison Sullivan, and the Allstate Insurance Company, Inc., the insurer of an automobile owned by the father, Thomas Edison Sullivan.
Juban Road runs in a southerly direction and is intersected from the west in a northeasterly direction by Wax Road. A stop sign faces the Wax Road traffic at the intersection. On the date of the accident Truman Wax, the driver of the plaintiff's panel truck, was driving south on Juban Road at a speed of approximately 30 to 35 miles per hour as he approached the intersection of Wax Road. At the same time Thomas Wayne Sullivan driving a 1955 Pontiac approached this intersection in a northeasterly direction on Wax Road. Thomas Wayne Sullivan failed to stop for the stop sign and collided with the truck.
Thomas Wayne Sullivan had negotiated to buy the 1955 Pontiac from one Optima LeBlanc, Jr., on Saturday August 12, 1961, two days prior to the accident. He had agreed to trade a 1936 Chevrolet automobile, which had been parked at his father's home and in addition, was to pay Mr. LeBlanc $130.00. Young Sullivan gave LeBlanc a check in the amount of $30.00 and agreed to pay the balance at a later date. He then drove the 1955 Pontiac to his father's home where he parked the car. When Thomas Edison Sullivan saw the car which his son had brought home he told him that he would have to return it. The record is not clear as to exactly when this discussion took place nor the reason therefor. However, a telephone call was placed to Mr. LeBlanc and pursuant to this conversation it was agreed the car would be returned and the purchase price, plus the traded vehicle, would be returned to Thomas Wayne Sullivan. On the following Monday, August 14, 1961, Thomas Wayne Sullivan, together with two other boys, attempted to return the Pontiac to Mr. LeBlanc. It was while they were enroute on this mission this accident occurred. Some time after the accident, the Pontiac was taken to Mr. LeBlanc's place of business and the 1936 Chevrolet was removed to Mr. Sullivan's home. The down payment was returned to Mr. Sullivan. Immediately prior to the accident the 1936 Chevrolet was not in an operating condition and had been parked at the Sullivan home for quite some time.
At the time of the accident there was in force and effect a policy of public liability and property damage insurance in favor of Thomas Edison Sullivan which covered a 1952 Buick owned by Mr. Sullivan. This policy was purchased by Mrs. Sullivan from an authorized agent of Allstate Insurance Company. Allstate was informed the Sullivans owned other vehicles in addition to the 1952 Buick described in the policy but these vehicles were not to be insured. Allstate was also informed the minor son, Thomas Wayne Sullivan, could drive but he was not allowed to drive the Buick named in the policy.
Allstate Insurance Company answered plaintiff's petition denying coverage of the 1955 Pontiac. Defendants, Thomas Edison Sullivan and his son, Thomas Wayne Sullivan filed a third party petition against Allstate claiming coverage under the policy issued to Thomas Edison Sullivan.
From a verdict in favor of the plaintiff against Thomas Wayne Sullivan and Thomas Edison Sullivan in the amount of $2850.00 and from a holding that the policy of insurance issued by Allstate did not cover the 1955 Pontiac, this appeal was taken by defendants Sullivan.
The defendants admitted Thomas Wayne Sullivan did not stop at the stop sign but contended this was due to a failure of the brakes on the automobile. Young Sullivan admitted he knew the brakes were not in "too very good" condition and they would bring the car to a *908 stop "if you just let it take its time." From this it is apparent this case does not fall within the category of latent or concealed defects as set forth in the case of Hassell v. Colletti, La.App., 12 So.2d 31. In that case the Court stated:
"If this testimony should be deemed sufficient to exonerate the defendants, it would indeed be an easy matter for any defendant in an accident of this kind to avoid the consequences of his neglect. While the doctrine of latent defects in automobiles has been recognized as a valid defense by the courts in actions of this kind, it is manifest that the proof submitted by the alleged tort-feasor must be of a most convincing nature. In fact, we think that the evidence should be such as to exclude any other reasonable hypothesis in respect to the cause of the accident except that it resulted solely from the alleged defect.
"In the case at bar, the defendants do do not attempt to prove the nature of the defect in the brakes or that, if a defect ever existed, it could not have been discovered and remedied by proper inspection."
The defendants allege contributory negligence on the part of the driver of plaintiff's vehicle but from an analysis of the record it is apparent the sole cause of this accident was the negligence of Thomas Wayne Sullivan. It is well settled a motorist with knowledge of the location of a stop sign has the right to rely on the assumption anyone approaching an intersection controlled by such a sign will observe it. Droddy v. Southern Bus Lines, La.App., 26 So.2d 761, and Blashfield Cyclopedia of Law and Practice, Vol. 2, 1032, page 216.
The driver of plaintiff's vehicle was driving at a reasonable rate of speed and knew the stop sign existed on Wax Lane. Thomas Wayne Sullivan was familiar with the location of the intersection and with the stop sign and the record does not indicate plaintiff's driver realized or should have realized the 1955 Pontiac was not going to obey the sign until it was too late to avoid the accident. The record shows upon discovering himself to be in a situation of peril the driver of plaintiff's vehicle responded in a manner in which an ordinary prudent operator would react under the circumstances, i.e., he swerved in an effort to avoid the collision. However, this action was too late and a collision did occur. See also Breaux v. Allstate Insurance Company, La.App., 86 So.2d 131, Allen v. State Farm Mutual Auto Ins. Co., La.App., 120 So.2d 372, 373, and Veal v. Audubon Insurance Company, La.App., 114 So.2d 648.
It was admitted by the defendants that Thomas Wayne Sullivan was an unemancipated, unmarried minor, residing with his father, Thomas Edison Sullivan, at the time of the accident. LSA-Civil Code, Article 2318 and Employers Fire Insurance Company v. Vincent, La.App., 52 So.2d 90 and cases therein cited make it abundantly clear the minor's father is liable for the son's negligent acts and resulting damages under these circumstances.
Allstate Insurance Company has denied coverage for the reasons that the vehicle driven by Thomas Wayne Sullivan was an owned vehicle as described in the policy and hence not covered because the only owned vehicle insured under said policy was a 1952 Buick; the vehicle was one furnished for the regular use of Thomas Wayne Sullivan; the policy is void ab initio due to material misrepresentation on the part of the Sullivans to the Insurance Company in connection with the purchase of the policy; the 1955 Pontiac was a temporary substitute for the vehicle owned by Thomas Wayne Sullivan; the policy is null and void for lack of cooperation of the insured with the insurer. Thomas Edison Sullivan contends the policy did provide coverage for this accident as the 1955 Pontiac was a "non owned" automobile within the meaning of the policy, and Thomas Wayne *909 Sullivan was an insured with respect to said non owned automobile.
The record is devoid of any proof of any lack of cooperation on the part of the insured. On the other hand, the record contains ample evidence there were no misrepresentations made to the company when the insurance was purchased. Allstate's agent was informed a teenager was a member of the household and was told he did not drive the vehicle named in the policy.
Since the 1936 Chevrolet owned by Thomas Wayne Sullivan was not in operating condition at the time of the accident, nor for some time prior thereto, the Pontiac was not a temporary substitute for it. Only one Louisiana case has been found which interpreted the "furnished for regular use" clause of insurance policies. It is Leteff v. Maryland Casualty Company, La.App., 91 So.2d 123. Under the facts of this case, however, there is no basis for argument the Pontiac was furnished for the regular use of Thomas Wayne Sullivan, and the Trial Court so held. At the time of the accident an agreement had been reached between the Sullivans and Mr. LeBlanc for the return of the vehicle and Thomas Wayne Sullivan had only driven the automobile on two occasions during the two days it was in his possession; he drove it home and was attempting to drive it back at the time of the accident.
In Part 1, under Coverage B of the policy it is provided that the company agrees:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
"A. * * *
"B. injury to the destruction of property including loss of use thereof, hereinafter called `property damage'; arising out of the ownership, maintenance or use of the owned automobile or any nonowned automobile * * *."
An insured is defined on page 2 of the policy as follows:
"The following are insured under Part 1:
"(a) With respect to the owned automobile,
"(1) the named insured and any resident of the same household,
"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
"(b) With respect to the non-owned automobile,
"(1) the named insured,
"(2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner."
A relative is defined in the policy to mean:
"a relative of the named insured who is a resident of the same household."
A non-owned automobile is defined in the policy as:
"an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative other than a temporary substitute automobile."
Thomas Edison Sullivan contends the purported sale by Optima LeBlanc to Thomas Wayne Sullivan was void ab initio for the reason Thomas Wayne Sullivan was an unemancipated minor and hence incapable of contracting. This being so, he contends the policy provides coverage under its "non-owned automobile" clause.
LSA-Civil Code, Article 1779 sets forth four requisites which are necessary *910 for a valid contract, the first being parties legally capable of contracting. Article 1785 of that Code provides minors are incapacitated from contracting, except in specified cases not applicable to the case at bar. Article 1865 of the Louisiana Civil Code which deals with lesion in minors' contracts states such contracts are void by law, and lesion need not be alleged in order to invalidate them. In the case of D. H. Holmes Company v. Rena, La.App., 34 So.2d 813 the Supreme Court stated, in holding a minor's contract was an absolute nullity:
"If the contract was a nullity, then the provisions of Articles 1793 and 2229 of the Civil Code concerning restitution of what was received, must be interpreted not as setting forth conditions precedent which must be complied with before such a contract may be declared a nullity, but must be held to provide for certain resulting rights granted to the other party to such a contract which has been declared null. In other words, neither of these articles provides that the restitution must be made before the contract may be declared null. Both seem to imply, if not to expressly state, that the contract may be treated as a nullity regardless of the restitution of the consideration given, but that after the contract has been declared null, then the other partyunder certain conditionsmay demand, not the purchase price originally agreed upon, but the restitution of the articles. And even this restitution may not be demanded unless the articles are shown to be still in existence and in the possession of the purchaser, and even then, because of the provisions of Article 2229, restitution may not be demanded `unless it be proved that what was paid accrued to their benefit,' that is to say, that what was received by the minor proved to be beneficial. And in passing, let us say that it is obvious that here again the burden of proof is on the vendor."
In holding that Thomas Wayne Sullivan was the owner of the 1955 Pontiac the Trial Court cited two cases, both of which are inapplicable. It cited the case of Butto v. Central Finance Company, La.App., 73 So.2d 44 and Stakes v. Jones, La.App., 125 So. 197. In the Butto case the Court was dealing with the question of whether or not a minor had ratified a purchase after he reached majority. In the Stakes case the Court held that the minor was the agent of his father and refused to rescind a sale upon the petition of the father for recision. Not only did Thomas Edison Sullivan not consent to the purchase of the automobile but he objected thereto immediately upon discovering the situation. Also, prior to the accident the vendor had agreed to receive the vehicle and refund the down payment and give back the vehicle which was traded in. The purported sale from LeBlanc to Thomas Wayne Sullivan was an absolute nullity.
The 1955 Pontiac was a nonowned automobile within the meaning of the insurance policy issued by the Allstate Insurance Company, and the policy provided coverage for the accident sued upon here. The policy is a family automobile policy and the purpose of such policies is to cover virtually every risk contingency which might reasonably occur in a family's use of automobiles. See 21 La.Law Review 836. Also, it is well settled law in the interpretation of contracts of insurance, all ambiguities must be construed in favor of the insured and against the insurer. Jones v. Standard Life and Accident Insurance Company, La.App., 115 So.2d 630.
The Trial Court erred in holding the 1955 Pontiac was an owned vehicle and hence not covered by Allstate Insurance Policy.
It is therefore, ordered, adjudged and decreed that the judgment of the Lower Court in so far as it denied recovery to the plaintiff from the defendant, Allstate Insurance Company, is hereby reversed, and judgment rendered in favor of plaintiff and *911 against the three defendants, Thomas Edison Sullivan, Thomas Wayne Sullivan and Allstate Insurance Company, insolido, in the sum of $2850.00 with legal interest from judicial demand until paid and all costs of this suit. In all other respects the judgment is affirmed.
Reversed in part, affirmed in part.